**STATE of North Dakota, Plaintiff, Appellee,**

v.

**Floyd McKAY, Defendant, Appellant.**

**Crim. No. 517.**

Supreme Court of North Dakota.

Oct. 22, 1975.

Rehearing Denied Nov. 4, 1975.

Ralph R. LePera (on the briefs and pleadings), and Jane Bickford, Bismarck, for defendant, appellant, argued by Jeffrey Edelman, Bismarck (appearance permitted by special motion).

Lewis C. Jorgenson, Asst. State's Atty., Devils Lake, for plaintiff, appellee.

SAND, Judge.

The defendant-appellant, Floyd McKay, pleaded guilty to robbery in the second degree and was sentenced by the district court of Ramsey County on June 21, 1974, to not less than eight years nor more than ten years in the State Penitentiary.

Thereafter, defendant applied to the same trial court for post-conviction relief under Chapter 29–32, North Dakota Centu-

ry Code. The defendant made a motion, which was granted, to amend and supplement the original application. The State responded to both the original and the amended or supplemented application. The trial court considered the matter without holding a hearing and, on October 16, 1974, issued its order dismissing the application, from which the defendant appeals.

The defendant was originally charged with robbery in the first degree. He was represented at the trial by court-appointed counsel. The defendant pleaded not guilty to the charge of first degree robbery but offered to plead guilty to robbery in the second degree. Before accepting the plea of guilty, the trial court, pursuant to Rule 11, North Dakota Rules of Civil Procedure, questioned the defendant to determine if the plea was voluntarily and knowingly given. Defendant claimed that because of his state of intoxication at the time of the alleged robbery he could remember none of the events of that day. Because the defendant did not remember any of the acts constituting the crime to which he was offering to plead guilty, the court conducted an *Alford*[1] hearing to determine if there was a factual basis for accepting the plea by the court and to ensure that the defendant's plea was knowingly and intelligently made, and to give defendant an opportunity to judge for himself if he should plead guilty to second degree robbery.

After the presentation of evidence, McKay was again asked if he wished to plead guilty to robbery in the second degree. He reaffirmed his plea of guilty. The plea of guilty was accepted by the court and sentence was passed.

The defendant asserts as error the following:

(1) The defendant was denied effective assistance of counsel due to the failure to object at the hearing to a suggestive in- court identification based on a prejudicial out-of-court identification and the failure to "probe, impeach, and investigate."

(2) The guilty plea entered into by defendant should not have been accepted by the court as it was based on misleading, conflicting, and contradictory testimony.

(3) There was not sufficient evidence to substantiate a factual basis for acceptance of such a guilty plea.

(4) The guilty plea is in fact void because the defendant was not made entirely aware of all the consequences of entering such a plea.

The defendant asks that the charges be dismissed and that a hearing be held to determine the issues presented, or that a trial by jury be ordered.

The defendant's first contention is that he was denied effective counsel at the hearing.

The proceeding or hearing held by the trial court before the plea was accepted was not a trial to determine guilt or innocence. Its purpose was to present evidence so that defendant could understandingly, knowingly, and intelligently make his plea, and to provide evidence for the court to determine if it should accept a plea. Defendant claims that because his counsel failed to object to certain testimony and to further probe and investigate, he was not given an accurate picture of the evidence against him; therefore, his guilty plea was not knowingly made.

■ The right to effective counsel at trial is granted by the Sixth Amendment of the United States Constitution, and applies to State courts through the Fourteenth Amendment of the United States Constitution. *Gideon v. Wainwright,* 372 U.S. 335, 85 S.Ct. 792, 9 L.Ed.2d 799 (1963).

■ Lack of counsel at trial will render a judgment void and require reversal of a conviction. *State v. Magrum,* 76 N.D. 527, 38 N.W.2d 358 (1949).

1. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

■ Ineffective, incompetent, or inadequate representation is the same as no counsel at all, and, as such, will equal a denial of due process. *State v. Keller,* 57 N.D. 645, 223 N.W. 698 (1929).

■ This court in *State v. Bragg,* 221 N.W.2d 793 (N.D.1974), set the following standard, as stated in *West v. State of Louisiana,* 478 F.2d 1026, 1033 (5th Cir. 1973):

> "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance."

■ Defendant points to discrepancies in the testimony which counsel failed to object to or to probe into, and claims these affected his decision to plead guilty. The fact that counsel did not object to the introduction and admission of several items of evidence does not show incompetency. Under the circumstances it could have been considered good strategy. As the State pointed out in its brief, one of the purposes of the hearing was to present evidence for the benefit of the defendant. In such a situation, counsel for the defendant is concerned with discovering as much of the State's case as he can. Objections to testimony would not serve any purpose. Counsel can better determine the strength of the State's case by letting it present everything it has. After the presentation he can evaluate the evidence and inform his client what the best course would be. Counsel's decision in this situation not to object to the discrepancies in the testimony does not constitute a showing that defendant has been deprived of effective counsel.

■■ Counsel is presumed to be competent and adequate and the burden of proof to show inadequacy or incompetency of counsel lies upon the defendant. *State v. Berger,* 148 N.W.2d 331 (N.D.1966). Defendant has not met that burden.

Defendant claims, however, that under *Saltys v. Adams,* 465 F.2d 1023 (2d Cir. 1972), counsel's failure to object to the in-court identification of the defendant shows lack of effectiveness of counsel. The court in *Saltys* found reversible error in counsel's failure to object to the admission of an incorrect identification based upon an illegal out-of-court identification, without which the defendant could not have been convicted. Victim Wilson had first pointed out McKay as his robber at the police station and later identified him at the trial.

Defendant claims that under the holding of *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Gilbert v. State of California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), such an identification would not be allowed at trial, and that counsel's failure to object to it at the hearing influenced the defendant in his decision to plead guilty. *Wade* held that courtroom identification of the accused would be excluded from evidence whenever the accused was exhibited to the witness before trial at a post-indictment lineup conducted for identification purposes without notice to and in the absence of the accused's counsel. The Court in *Wade* also said that the government must be given an opportunity to establish by clear and convincing evidence that the in-court identification was based upon observation of the suspect under other than lineup identification. In the instant case there is ample evidence that the victim's identification of the defendant was based upon his personal observation, which will be stated later, and was not the result of identification at the police station. The Court in *Wade* listed as factors to be considered in application of the test the prior opportunity of the witness to observe the crime, the existence of any discrepancy between any prelineup description and the defendant's actual description, and the lapse of time between the act and the identification.

The *Alford* hearing brought out the following evidence:

The victim of the robbery, Fred Wilson, testified at the hearing that on May 20, 1974, at approximately 5:00 p. m., he was in the basement of the Presbyterian church at Devils Lake and as he was coming up the stairway to the entry he saw the defendant. The defendant came to him, grabbed him and threatened to kill him unless he gave defendant some money. When he tried to escape, defendant held and choked him. The defendant held his arm to prevent him from escaping, walked him across the street and half a block down the street to an alley into which he was forced. He did not remember what happened after that because he was "out." When he (Wilson) "came to" he noticed that his glasses were gone and that he had been beaten. L. A. Braunagel testified that he was across the street from the alley and saw Wilson with another man who had a cast on his hand and was wearing a powder blue coat. Braunagel stated that Wilson was bleeding and had told him that this man wanted to take his money and to kill him. Braunagel then took Wilson to the police station, where Wilson told police what he "remembered happening." Defendant McKay was picked up by the police from the description given to the police. He had in his possession a watch and ring belonging to Wilson. Wilson testified that approximately forty-five minutes after his initial trip to the police station he returned to identify the defendant. The defendant was in a cell at the station at that time and was without counsel. Wilson stated that he identified the defendant at the jail from the cast on his right hand and from his face.

■ The fact that Wilson had a chance to closely observe the defendant for several minutes, had talked to him, had given a description to the police of the man who had robbed him which fit the defendant, and had identified him shortly after the crime, are sufficient to show that Wilson's in-court identification of the defendant was not based on a suggestive viewing of him at the police station, but had a basis independent of that viewing. In this instance the defendant was picked up by police on the description given by the victim. The question of whether the police station showing was suggestive or whether defendant had a right to counsel at the show-up need not be discussed any further here because any technical error in procedure would be harmless error. Counsel's failure to object to the identification has not harmed defendant in any way.

The comments and observations in *Smith v. Paderick*, 519 F.2d 70 (4th Cir. 1975), made by the Fourth Circuit Court have application to the instant case on the question whether testimony relating to prior identification by the witness should have been admitted. The Court said:

"Had Smith's state trial been to a jury we would be inclined to agree with him that failure to exclude it amounted to reversible error. But Smith's case was tried to a judge, and that makes a difference. The line between an identification that is admissible but likely to carry little weight, and one that is inadmissible under *Stovall*, [*Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199] because it is so untrustworthy as to violate due process, is not a bright one. See *Foster v. California*, 394 U.S. 440, 442 n. 2, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969). The Supreme Court has suggested approximate coordinates of the line in several jury trial cases, but has not indicated whether the line lies in the same place for both judge and jury trials. We think it does not.

. . . . .

"We have previously expressed our awareness of the danger and our confidence in experienced trial judges to guard against it. *United States v. Levi*, 405 F.2d 380, 383 (4th Cir. 1968). Tainted identification evidence cannot be allowed to go to a jury because they are likely to accept it uncritically. An experienced trial judge will doubtless receive it skeptically, and accord it no more weight than it deserves."

In the instant case the trial judge was an experienced and highly qualified jurist.

In *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), the United States Supreme Court refused to apply the *Wade* exclusionary rule of law to routine police investigation and identification procedures prior to indictment or its equivalent. The holding in the *Kirby* case has application to the instant situation as this was a routine police investigation and identification process, rather than an identification after indictment or its equivalent.

■ With reference to the victim's alleged discrepancies regarding the identification of the defendant, we have examined the record and find that there are minor variances, but of no significance. These variances comport with human nature. We must realize that a person under the trying circumstances in which the victim found himself in this instance does not give attention to exact detail in every respect as a general rule. Exact detailed description is not a necessary requirement for identification purposes.

■ Defendant contends that his plea of guilty to robbery in the second degree should not have been accepted by the court because it was not voluntarily and knowingly made and there was no factual basis for the court to accept it. Because a plea of guilty results in a waiver of the privilege of self-incrimination, the right to jury trial, and the right to confront one's accusers, the utmost care must be taken to ensure that the accused has a full understanding of what his plea connotes and of its consequences. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Rust v. State,* 218 N.W.2d 482 (S.D.1974); *Singletary v. State,* 227 N.W.2d 424 (S.D.1975).

Rule 11 of the Rules of Criminal Procedure details the procedure to be followed and determinations that must be made by the court before accepting a plea of guilty. The procedure was followed and proper determinations were made by the trial court.

The trial court, before asking the defendant to plead, explained at length and in detail the effect of a plea of guilty and the consequences thereof. The trial court even went beyond the requirements of Rule 11 and also explained to the defendant the possible effect a plea of guilty could have on future employment.

After the *Alford* hearing, the court again briefly advised the defendant the effect of a plea of guilty to the crime of robbery in the second degree and the sentence that may be imposed. The court specifically asked Mr. McKay if he understood the effect of the plea of guilty, to which McKay responded, "Yes, sir." The court then asked, "Is this what you want to do?" McKay responded, "Yes."

"THE COURT: You have conferred with Mr. Rutten and talked this matter over?

"McKAY: Yes, sir.

"THE COURT: Mr. Rutten, what is your position with respect to defendant's plea of guilty to the crime of Robbery in the Second Degree?

"MR. RUTTEN: Your Honor, we have discussed the facts and we believe that this would be in the best interest since we feel that if there was a trial the chances of conviction on even Robbery in the First Degree are very good."

The court again addressed the defendant:

"THE COURT: Do you stand with your plea of guilty to Robbery in the Second Degree, or do you withdraw your plea of guilty to that charge?

"MR. McKAY: I will stay with guilty pleas, sir.

"THE COURT: Mr. Rutten?

"MR. RUTTEN: That is correct."

■ Defendant's plea of guilty was accompanied by a statement that he did not remember committing the crime, but this does not render the plea of guilty invalid.

"An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a

prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, 171 (1970).

See also, *State v. Tahash,* 263 Minn. 299, 116 N.W.2d 666 (1962); *State v. Fisher,* 292 Minn. 453, 193 N.W.2d 819 (1972).

An accused who cannot remember committing the crime may be convinced by the evidence against him that he did do it, and that he may be able to get a better deal by pleading guilty. He should not be forced to defend against a suit he cannot win. In *Alford, supra,* defendant did not merely claim "no recollection," but professed innocence, but the Court concluded that a plea of guilty could stand. In the instant case defendant merely claims no recollection.

The decision on how to plead must be based on an understanding of the evidence against him and of the consequences of his plea. The trial court must ensure that the facts on which defendant will base his decision are accurate and properly presented. *Boykin, supra.*

This court on appeal must look at the record to determine if defendant's plea met the requirements of Rule 11 and *Alford.* The record shows that defendant was informed of his rights and the consequences of a plea of guilty. Defendant was present at the hearing and was assisted by experienced and competent counsel.[2] No coercion has been shown.

By pleading guilty to second degree robbery defendant was able to escape possible conviction for robbery in the first degree.

The evidence presented at the *Alford* hearing was sufficient to support the finding of the court that the plea was knowingly and voluntarily given and that there was a factual basis for accepting the plea.

A charge of incompetent counsel is easily made, but difficult to defend against.

Even though precaution is exercised, nevertheless the hindsight thought processes unconsciously seep ever so quietly into the mental process where retrospective evaluation is involved. In retrospect, it is always easier to suggest what should have been done because as a subjunctive proposition it is not necessary to carry out what would have resulted and seldom, if ever, is it recognized that if something were done in a certain manner something else would have been done in a different manner, which puts the entire matter in an "iffy" situation.

Counsel is not expected to perform superhuman efforts or miracles. The defendant and his appellate counsel failed to come up with any single item of evidence which would have been beneficial to the defendant at the time of the hearing on his plea of guilty, or now, which should have been discovered or uncovered by due diligence by the original counsel appointed for the defendant at the time of the *Alford* hearing. Appellant's counsel, we presume, had the opportunity to investigate and would have presented any exculpatory evidence if there in fact were any.

The memorandum opinion of the trial judge dated October 15, 1974, which served as a basis for the order dated October 16, 1974, dismissing defendant's application for post-conviction relief, stated in part that defendant's appointed counsel "is experienced counsel and the record is barren of any inferences that defendant was not competently represented."

As to the other points raised on appeal, they have been adequately discussed herein and are not deserving of any further attention.

The order of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON, VOGEL and PEDERSON, JJ., concur.

2. The district court so stated in its Memorandum Opinion dated 15 October 1975.