The STATE of North Dakota, Plaintiff and Appellee,

v.

Perry Dean HAGEMANN, Defendant and Appellant.

Cr. No. 880.

Supreme Court of North Dakota.

Dec. 2, 1982.

Neil W. Fleming, Cavalier, for defendant and appellant.

Cameron D. Sillers, State's Atty., Langdon, for plaintiff and appellee.

PAULSON, Justice.

Perry Dean Hagemann appeals from a final judgment of the District Court of Cavalier County dated March 22, 1982, dismissing his application for post-conviction relief. We affirm.

On July 27, 1981, Hagemann was arrested and charged with a class B felony, gross sexual imposition, in violation of § 12.1-20-03 of the North Dakota Century Code.[1]

---

1. Section 12.1-20-03, N.D.C.C., provides:

*"12.1-20-03. Gross sexual imposition.*

"1. A person who engages in a sexual act with another, or who causes another to engage in a sexual act, is guilty of an offense if:

a. He compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being;

b. He or someone with his knowledge has substantially impaired the victim's power to appraise or control his or her conduct by administering or employing without his or her knowledge intoxicants or other means with intent to prevent resistance;

c. He knows that the victim is unaware that a sexual act is being committed upon him or her;

d. The victim is less than fifteen years old; or

e. He knows or has reasonable cause to believe that the other person suffers from a mental disease or defect which renders him or her incapable of understanding the nature of his or her conduct.

"2. A person who engages in sexual contact with another, or who causes another to engage in sexual contact, is guilty of an offense if:

a. The victim is less than fifteen years old; or

b. *He compels the victim to submit by force or by threat of imminent death, serious bodily injury, or kidnapping, to be inflicted on any human being.*

"3. An offense under this section is a class A felony if in the course of the offense the *actor inflicts serious bodily injury upon the victim,* or if his conduct violates subdivision d of subsection 1, or if the victim is not a voluntary companion of the actor and has

The information and amended criminal complaint alleged that on or about July 26, 1981, at the Senator Young Dam area within Cavalier County, the said

"Defendant engaged in a sexual act with Albert Domres; That the Defendant compelled the victim to submit by force by threatening him with serious bodily injury; That the Defendant threatened Albert Domres and Marie Domres with imminent bodily injury by holding them under gunpoint and threatening to kill them if they did not do what they were told; That the Defendant forced both Albert Domres and Marie Domres to disrobe and the Defendant engaged in sexual acts with Albert Domres by causing contact between the Defendant's mouth and the victim's penis."

Hagemann was arraigned before the District Court of Cavalier County on September 2, 1981. At his arraignment, the defendant was read the contents of the criminal information and was informed of his constitutional rights by the district court. Represented by court-appointed counsel, Hagemann entered a plea of not guilty and trial was scheduled for September 29, 1981.

On the trial date, Hagemann changed his plea from not guilty to guilty, pursuant to a plea agreement prepared by his defense counsel and the state's attorney. The plea agreement provided that in return for a guilty plea, the State would recommend that the defendant's sentence should be set at six years in the North Dakota State Penitentiary. During the hearing the trial judge asked Hagemann if he had any questions concerning the consequences of his actions, but the judge did not at that time re-advise him of his constitutional rights. In addition, the judge questioned Hagemann concerning his understanding of the plea agreement and sentencing guidelines. The court also asked Hagemann if he could remember the contents of the criminal information which was read to him at the September 2, 1981, arraignment. Hagemann replied that he had no questions regarding any of the above matters. Hagem-

ann also replied in the negative when the trial court asked him if his change of plea was made as the result of any threats. Upon hearing a factual basis for acceptance of the plea agreement from the prosecuting attorney and defense counsel, the trial judge sentenced Hagemann to imprisonment in the State Penitentiary for six years in accordance with the terms of the plea agreement.

After being incarcerated at the penitentiary, Hagemann obtained other counsel and filed an application for post-conviction relief, pursuant to the Uniform Post-Conviction Procedure Act, Chapter 29–32, N.D. C.C., requesting that his judgment of conviction be vacated and that he be allowed to withdraw his plea of guilty and enter a plea of not guilty to the charge. In support of the application for post-conviction relief, it was alleged:

a) That the defendant did not understand the nature of the plea bargain.

b) That the defense counsel and the prosecuting attorney led the defendant to believe that the defendant had no choice but to go along with such plea bargain.

c) That the defendant does not remember doing any of the acts and there are insufficient facts presented on the record to justify the acceptance of plea.

d) Defendant failed to understand that he, by pleading guilty, would receive a six-year penitentiary sentence.

e) That the defendant was subject to undue pressure to accept the plea bargain and did not fully understand the consequences of the plea.

f) That the defendant was led to believe that there would be no mention of a weapon regarding the plea bargain and therefore that the defendant would not be sentenced under the mandatory sentencing provision regarding firearms.

g) That the defendant was surprised and confused as to why he should be sentenced immediately upon the receipt of the plea and not be allowed to call witnesses in his own behalf.

not previously permitted him sexual liberties.

Otherwise the offense is a class B felony."

h) That the defendant was confused as to why he was not allowed to have a trial and present evidence.

The District Court of Cavalier County dismissed the defendant's application for post-conviction relief, pursuant to the provisions of § 29–32–06, N.D.C.C., and an order was entered accordingly. Hagemann appeals.

Hagemann's major contention on appeal is that the district court abused its discretion in dismissing his application for post-conviction relief because Hagemann did not understand the effect of his entry of a guilty plea and, therefore, did not knowingly and intelligently enter his plea of guilty under the standards prescribed by Rule 11, North Dakota Rules of Criminal Procedure. We believe that the gist of Hagemann's argument that his plea of guilty was not given voluntarily and intelligently can be reduced to three contentions: (1) that substantial compliance with Rule 11(b), N.D.R. Crim.P., did not exist when, although the defendant was advised of his constitutional rights at his arraignment on September 2, 1981,[2] he was not re-advised of his rights or specifically asked whether or not he recalled them at the change-of-plea hearing on September 29, 1981; (2) that substantial compliance with Rule 11(e), N.D.R.Crim.P., did not exist because there was an insufficient factual basis adduced for the guilty plea and because the district court did not specifically inquire of the defendant as to the factual basis of the plea; and, (3) that the totality of the circumstances indicate that the defendant was confused and was not aware of the rights he was waiving and of the consequences of his plea of guilty. We will address each contention in turn.

### I

The law with respect to guilty pleas is well settled.[3] In *State v. Storbakken,* 246 N.W.2d 78, 82 (N.D.1976), we stated:

"There are federal guidelines to follow when considering guilty pleas. In *Boykin v. Alabama,* 395 U.S. 238, 242–243, 89 S.Ct. 1709 [1711], 23 L.Ed.2d 274 (1969), the United States Supreme Court stated:

" 'A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment....

. . . . .

" 'Several federal constitutional rights are involved in a waiver that takes place

2. On August 19, 1982, counsel in this case entered into a written agreement which designated the portions of the record to be included in the appendix. This stipulation did not include the transcript of the arraignment proceedings. On October 4, 1982, the state's attorney filed an "Addendum to Appellee's Brief" which included a copy of the transcript of the arraignment proceedings.

Rule 30(b) of the North Dakota Rules of Appellate Procedure provides in pertinent part:

"*(b) Determination of Contents of Appendix; Cost of Producing.* The parties are encouraged to agree as to the contents of the appendix. In the absence of written agreement, the appellant shall serve on the appellee not later than 10 days after the date on which the transcript is filed, a designation of the parts of the record he intends to include in the appendix and a statement of the issues he intends to present for review. If the appellee deems it necessary to direct the particular attention of the court to parts of the record not designated by the appellant he *shall serve upon the appellant, within 10* days after receipt of the designation, a designation of those parts.... The appellant shall include in the appendix the parts thus designated. *In designating parts of the record for inclusion in the appendix, the parties shall have regard for the fact that the entire record is always available to the court for reference and examination* and shall not engage in unnecessary designation...." [Emphasis added.]

Thus we are not bound to consider only what the parties have agreed to include in the appendix. However, during oral arguments before our court it was discovered that the transcript of the arraignment proceedings was not part of the record certified to this court by the district court. Defense counsel, during oral arguments, stipulated to having the entire transcript of all the proceedings certified to this court and thus we properly may consider the transcript of the arraignment proceedings in this case.

3. In *State v. Gustafson,* 278 N.W.2d 358, 362 (N.D.1979), we held that the voluntariness of pleas of guilty is appropriately reviewable under the Uniform Post-Conviction Procedure Act, Chapter 29–32, N.D.C.C.

when a plea of guilty is entered in a state criminal trial. First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth.... Second, is the right to trial by jury.... Third, is the right to confront one's accusers.... We cannot presume a waiver of these three important federal rights from a silent record.'

"And in *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463 [1468], 25 L.Ed.2d 747 (1970), the United States Supreme Court stated:

> "'Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'"

*See also State v. Barlow,* 193 N.W.2d 455, 458 (N.D.1971).

█ Rule 11(b), N.D.R.Crim.P., which largely codifies the principles in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) [*see* Explanatory Note to subdivision (b) of Rule 11, N.D.Rules of Court '81 Pamph.], outlines some of the requirements a court must follow in accepting a guilty plea. These procedures are mandatory and binding upon the court. *State v. Mortrud,* 312 N.W.2d 354, 356 (N.D. 1981); *State v. McKay,* 234 N.W.2d 853, 859 (N.D.1975). Rule 11(b), N.D.R.Crim.P., provides in pertinent part:

"*(b) Advice to Defendant.* The court shall not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c)] in open court, informing him of and determining that he understands the following:

"(1) The nature of the charge to which the plea is offered;

"(2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered;

"(3) That the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty;

"(4) That if he pleads guilty there will not be a further trial of any kind, so that by pleading guilty he waives the right to a trial by jury or otherwise and the right to be confronted with the witnesses against him; ...

█ Hagemann does not claim that all of the applicable rights set forth in *Boykin, supra,* and in Rule 11(b) were not conveyed to him, nor does he claim that he did not understand their meaning at the time he was apprised of them at his arraignment on September 2, 1981. Rather, he argues that the district court erred in not re-advising him of these rights at the time he entered his plea of guilty on September 29, 1981. A review of the record of the September 2 arraignment proceedings[4] reveals that Ha-

---

4. The record at the arraignment proceedings on September 2, 1981, reveals the following dialogue:

"THE COURT: I am going to explain to you your constitutional and legal rights and if you have any question along the way, you can stop me, and I will attempt to explain it to you. This is being done so you will understand the proceedings and if you have any questions you will be able to ask your attorney also before entering a plea.

"You are entitled to be aided and advised by a lawyer.

.    .    .    .    .

"You have the right to a speedy and a public trial by a jury and if you enter a plea of not guilty you are entitled to and will receive a trial by jury.

"You are entitled to have a copy of the Information which charges you with the commission of the crime and you have been given this, and you are entitled to meet these witnesses named face to face in this courtroom and you have the right to have your attorney cross examine those witnesses. Do you know what I mean by cross examine?

"DEFENDANT   Question them.

"THE COURT.   Exactly.

"You are entitled to the processes of this Court to compel the attendance of witnesses to testify on your own behalf.

"You cannot be compelled to be a witness against yourself; that is, you cannot be compelled to take the witness stand and testify. And the jury will be informed they are not to hold that against you.

"Every person is presumed to be innocent and the State must prove you are guilty of this

gemann was informed of all of his necessary rights and that the district court did determine that Hagemann understood these rights and the charge brought against him.

This case is substantially similar to the fact situation in *State v. Storbakken,* 246 N.W.2d 78 (N.D.1976). In *Storbakken, supra,* the defendant challenged the validity of his guilty plea solely because the trial court did not restate his constitutional rights *eo nomine* at the time it accepted the plea, and because the trial court did not follow the exact format of questioning spelled out in Rule 11, N.D.R.Crim.P. In *Storbakken,* as in the instant case, it was clear from the record of the arraignment proceedings that the defendant was informed of the nature of the charge against him; the maximum punishment if convicted; his right to court-appointed counsel; his right against compulsory self-incrimination; his right to a speedy and public trial; his right to a jury trial; his right to cross-examine witnesses; his right to subpoena witnesses; his presumption of innocence; and the State's burden of proof.

Concluding that the defendant had alleged "only a failure to follow a specific legal ritual", we held that it is sufficient to satisfy due process and the procedural mandates of Rule 11, N.D.R.Crim.P., if knowledge on the part of the defendant of the rights waived by pleading guilty "is clearly reflected from the whole record, not just the interrogation of the defendant by the trial court". *Storbakken, supra* 246 N.W.2d at 84. Thus, we concluded that substantial compliance with Rule 11 could be achieved if the record of the arraignment, in conjunction with the record of the change-of-plea hearing, clearly revealed that the defendant had knowledge of the rights he was waiving by pleading guilty. The entire record in the instant case leaves us with no doubt that Hagemann was aware of the consequences of his guilty plea.

Hagemann argues that *Storbakken, supra,* is distinguishable from the instant case because the defendant in *Storbakken* answered in the affirmative when, at his change-of-plea hearing, he was asked if he had been advised of his rights at such hearing or at some earlier proceeding; if he could remember those rights; if he found any fault in his representation by his retained counsel; if his changed plea was his own free and voluntary act; and if he had been advised of what the maximum sentence could be if he changed his plea to guilty. Hagemann urges that because the trial court did not ask these specific ques-

offense beyond all reasonable doubt before you may be convicted and sentenced.

"Do you have any motions to make at this time?

"MR. STEVENSON: Your Honor, not at this time.

"THE COURT: In this state there are two pleas that may be entered. They are: (1) guilty and (2) not guilty. If you plead guilty you are giving up your trial by jury. You are admitting that you committed this offense and you are then subject to the punishment of this Court, which means, you may—and *for this offense* which is a Class B felony you are subject for up to ten years in the State Penitentiary. That is the maximum sentence I can give you. Do you know what I mean by maximum. Do you know what that means?

"DEFENDANT: Yes.

"THE COURT: It can be something less than that. I can place you on probation. What the sentence would be I do not know at this time, but it would be dependent on your background and other things that I think are important as far as punishment are concerned—punishment is concerned.

"The other plea is not guilty and if you plead not guilty you will have that trial by jury and they will decide if you are guilty or not guilty. If they find that you are guilty you will be sentenced as I said before. If you are found not guilty you will be released and that will end the matter.

"You do not have to enter a plea at this very moment. Is there anything you want to visit with your lawyer about?

"DEFENDANT: Not, not that I can think of.

"THE COURT: Has there been a plea agreement entered *into between* the State and Mr. Stevenson?

"MR. SILLERS: No, Your Honor.

"THE COURT: All right, there is no plea agreement. Mr. Stevenson, are you satisfied he understands the nature of these proceedings and is prepared to enter an intelligent plea?

"MR. STEVENSON: Yes, I explained what the arraignment was about and he acknowledged that he understands and is prepared.

"THE COURT: All right, Mr. Hagemann, what is your plea to this crime; guilty or not guilty?

"DEFENDANT: Not guilty."

tions at the change-of-plea hearing in the instant case, *Storbakken* is inapposite and substantial compliance with Rule 11(b), N.D.R.Crim.P., is lacking.

Hagemann misconceives the thrust of our decision in *Storbakken*. In that case we specifically declined to require a ritualistic compliance with the format of Rule 11, N.D.R.Crim.P. *See also State v. Mortrud,* 312 N.W.2d 354, 356 (N.D.1981); *State v. Gustafson,* 278 N.W.2d 358, 363 (N.D.1979); *State v. Hamann,* 262 N.W.2d 495, 498–499 (N.D.1978). To adopt Hagemann's interpretation of *Storbakken* would result in exchanging one ritualistic formality with another. We stated in *Storbakken, supra* 246 N.W.2d at 84, that:

5. The record of the change-of-plea hearing held on September 29, 1981, reflects the following dialogue:

"[THE COURT:] Your attorney has indicated you wish to change your plea. However you are the person who must tell me that and before you do I want to give you the opportunity to have answered any questions you may have about the consequences of doing what you are doing.

"Now, if you change your plea to guilty, you understand that I alone will sentence you?

"DEFENDANT: Yes.

"THE COURT: There is a plea agreement here which I will hear in a very short time, and I will listen to that plea agreement. If I think it is appropriate under all of the circumstances of the case, including your background and other important personal factors about you—if I think it is appropriate I will accept that or give you something less than they have agreed to.

"If I reject their plea agreement which would mean I want to give you a more severe sentence, than they are agreeing to, I will let you know that and give you the opportunity to withdraw your plea of guilty and go to trial.

"And then, of course, if you are found guilty you will have to accept whatever sentence the Court will give you at that time.

"If you do not want to do that you can still plead guilty but you will receive more of a sentence than your attorney and the States Attorney have agreed to.

"Maybe that gets complicated but you have discussed this with him, have you, Mr. Stevenson?

"MR. STEVENSON: Yes, I have, Your Honor.

"THE COURT: I note from the psychiatric report from Jamestown this man has an I.Q. of 107, which would mean average intelligence. Do you feel he understands the situation?

"While inquiry must be fully developed on the record, it need not assume any predetermined, ritualistic form to conform with Rule 11, but rather the '* * * [proper scope of the examination] of the defendant will in each case depend upon the complexity of the charge as well as all of the surrounding circumstances * * *'. Sappington v. United States, 468 F.2d 1378, 1380 (8th Cir.1972), cert. denied, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973); ..." [Emphasis added.]*

The record of the September 29, 1981, change-of-plea hearing [5] reveals that the trial court asked the defendant if he had any questions regarding the consequences of his guilty plea and it proceeded to metic-

"MR. STEVENSON: Your Honor, I do, at the time I discussed it with him, which was at 10:00 and I have discussed it previous to that.

"THE COURT: I think the main thing he would have to understand is if he does have questions he would have a chance to talk privately with you. He does not have to make any decision on that now.

"Do you have any questions, Mr. Hagemann, about what I have just said?

"DEFENDANT: No, Your Honor.

"THE COURT: Something you have to make a decision about is if you wish to change your plea or not.

"You will be given an opportunity to discuss it with your attorney.

"All right, to the charge of Gross Sexual Imposition which is a Class B Felony, and the contents of that Information which is a Class B Felony, and the contents of that Information were read to you on September 2nd. Do you recall that?

"DEFENDANT: Yes.

"THE COURT: The wording of the charge, what you did, do you remember that—

"DEFENDANT: Yes.

"THE COURT: Being read to you?

"DEFENDANT: Yes.

"[THE COURT:] There are a few more questions I want to ask.

"Were any threats made to you by anyone that caused you to change your plea?

"DEFENDANT: No.

"THE COURT: Are you now on probation or parole to any government agency?

"DEFENDANT: No.

"THE COURT: Do you know what I mean?

"DEFENDANT: Yes, I am out on legal bond.

"THE COURT: Yes, on this charge.

"DEFENDANT: Yes.

"THE COURT: Yes. All right, you may be seated."

ulously explain the practical effects of his guilty plea, albeit not in the exact format prescribed by Rule 11. Hagemann had no questions. The trial court also asked the defendant if he could recall the contents of the criminal information which was read to him during his arraignment. Hagemann replied in the affirmative. We also note that defense counsel indicated to the trial court that he believed that the defendant understood the consequences of his guilty plea because defense counsel had discussed the situation with Hagemann immediately prior to the change-of-plea hearing and on previous occasions. Given the record of the arraignment and the change-of-plea hearing in the instant case, we find substantial compliance with Rule 11(b), N.D.R.Crim.P.

Hagemann also contends, considering his mental condition and the 27-day interval between his arraignment on September 2, 1981, and his change-of-plea hearing on September 29, that it was impossible for him at the change-of-plea hearing to remember the constitutional rights that were read to him at the arraignment and, thus, his waiver of these rights was not knowingly and intelligently given. During the change-of-plea hearing, Hagemann stated that he did not remember committing the crime with which he was charged. Psychiatric and neuropsychological evaluations were performed of the defendant which indicated that Hagemann suffered from temporary losses of memory and that such memory lapses possibly were caused by a previous head injury compounded by the defendant's dependence upon alcohol.[6] According to the reports and statements made by defense counsel, Hagemann was heavily intoxicated on the day of the crime and, although the defendant recollects the events immediately preceding and following the incident, he does not remember engaging in the sexual contact itself.

We fail to see what bearing this contention has on the mental state of the defendant, particularly as to *the times of both the arraignment and the change-of-plea hear-*

*ing.* The defendant does not maintain that he was intoxicated during either of the hearings. Indeed, the record clearly reflects that the defendant understood the consequences of the proceedings which were taking place.

With regard to the defendant's argument that the 27-day interval between the arraignment and the change-of-plea hearing should negate the effectiveness of his guilty plea, we agree with the reasoning of the South Dakota Supreme Court in *Clark v. State,* 294 N.W.2d 916 (S.D.1980), wherein the defendant similarly alleged that, because he had not been re-advised of his constitutional rights at his change-of-plea hearing (which was held 26 days after his arraignment), his guilty plea was not voluntarily and intelligently given. Finding no infirmity with the trial court's acceptance of the plea, the court in *Clark, supra* 294 N.W.2d at 919, quoted with approval from its previous decision in *Singletary v. State,* 88 S.D. 655, 227 N.W.2d 424, 426 (1975), wherein it stated:

> " 'The time element is but one of the factors in the totality of the circumstances determining whether there was knowledge on the part of the petitioner and whether there has been a voluntary entry of a guilty plea.' "

Considering the 27-day time interval between the arraignment and the change-of-plea hearing as but one of the factors in the totality of the circumstances in the instant case, we conclude that the district court substantially complied with Rule 11(b), N.D. R.Crim.P.

II

Rule 11, N.D.R.Crim.P., requires a court to satisfy itself that there is a factual basis before entering judgment upon a plea of guilty. *State v. Hamann,* 262 N.W.2d 495, 500–501 (N.D.1978). Rule 11(e), N.D.R. Crim.P., provides:

> *"(e) Determining Accuracy of Plea.* Notwithstanding the acceptance of a plea

---

**6.** Defense counsel does not contend that Hagemann was mentally incompetent to plead

guilty. *See State v. Storbakken,* 246 N.W.2d 78, 81 (N.D.1976).

of guilty, the court should not enter a judgment or dispositional order upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

In the instant case, Hagemann contends that Rule 11(e) was violated because there was an insufficient factual basis adduced for the guilty plea and because the district court did not specifically inquire of the defendant as to the factual basis of the plea.

When the court initially asked the defendant for his plea at the September 29, 1981, hearing, Hagemann responded:

"Your Honor, I can't remember actually committing the crime, but from the statements and the evidence surrounding the case, evidently I am guilty."

The trial court then proceeded to hear summations of the evidence against Hagemann given by defense counsel and the state's attorney in order to satisfy itself that a factual basis had been established for the plea of guilty. Before entering judgment against Hagemann, the following colloquy occurred:

"THE COURT: Do you have anything to say to the Court before it pronounces sentence upon you?

"DEFENDANT: No, nothing, Your Honor, except that I feel I do need and want alcoholic treatment very badly and in my opinion it's not fair to be sentenced to prison for a crime I cannot actually remember committing.

"THE COURT: However, you have no doubt it was committed?

"DEFENDANT: Given the circumstances [sic] and the statements and all the other evidence, apparently it did happen, yes."

In North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the United States Supreme Court held that a guilty plea can be accepted even when it is accompanied by protestations of innocence. The Supreme Court in Alford, supra 400 U.S. at 37, 91 S.Ct. at 167, 27 L.Ed.2d at 171, stated:

"An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

"Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt."

Our court, in State v. McKay, 234 N.W.2d 853 (N.D.1975), extended the principles enunciated in Alford to situations in which the defendant pleads guilty yet professes no recollection of the crime. We reasoned in McKay, supra 234 N.W.2d at 860:

"An accused who cannot remember committing the crime may be convinced by the evidence against him that he did do it, and that he may be able to get a better deal by pleading guilty. He should not be forced to defend against a suit he cannot win. In Alford, supra, defendant did not merely claim 'no recollection,' but professed innocence, but the Court concluded that a plea of guilty could stand. In the instant case [McKay] defendant merely claims no recollection."

▮ Although our court has never discussed the specific procedures necessary to satisfy the factual basis requirement for an Alford plea, we recently stated, in State v. Mortrud, 312 N.W.2d 354, 357 (N.D.1981), a case expressly limited to its own facts and circumstances, that:

"Rule 11 requires the court to address the defendant personally in order to determine the factual basis for the guilty plea and to assure that it is knowing and voluntary."

At first glance it would appear that our statement in Mortrud, supra, that a court must address a defendant personally in order to determine the factual basis for a guilty plea, and the United States Supreme Court's decision in Alford, are irreconcilable and that Mortrud represents a higher stan-

dard for acceptance of guilty pleas which precludes acceptance of an *Alford* plea in North Dakota. We find no irreconcilable difference and reject the defendant's contention in the instant case that substantial compliance with Rule 11(e), N.D.R.Crim.P., did not exist because the district court did not specifically inquire of the defendant as to the factual basis of his *Alford* plea.

Initially, we note once again that our decision in *Mortrud* was specifically limited to the particular facts and circumstances of that case. Most importantly, however, our court in *Mortrud* was not considering the situation where a defendant attempts to enter a plea of guilty while simultaneously claiming no recollection of the crime with which he is charged, as are the facts in the instant case. A review of our previous decisions involving the validity of *Alford* pleas reveals that we have never required that the defendant personally provide the factual basis for his plea of guilty when he claims no recollection of the crime charged. *See State v. DeCoteau,* 325 N.W.2d 187, (N.D.1982); *State v. McKay,* 234 N.W.2d 853 (N.D.1975). We decline to adopt such a rule today.

■ We next determine whether or not the record in the instant case nevertheless reveals that a sufficient factual basis was established for Hagemann's plea of guilty. Following the defendant's plea of guilty which was accompanied by his claim of no recollection of the crime, the court addressed defense counsel:

> "THE COURT: ... do you want the Court to accept this plea in view of the fact that he claims not to have any remembrance of it?

7. The state's attorney offered the following synopsis of the evidence against Hagemann:

> "MR. SILLERS: On July 26th Marie and Albert Domres were in the vicinity of Senator Young Dam in Cavalier County and the purpose of their trip was to pick blueberries. While they were out there they observed this car that came driving by, but went down the road and later came back and stopped. They were up on a hill and the Defendant walked up to them and asked them if they had seen any bears, because he had heard there were a number of bears in the vicinity.

> "In other words, this Court has to establish a factual basis for acceptance of the plea.

> "MR. STEVENSON: Your Honor, Mr. Hagemann, although he does not remember the actual sexual act itself, he has admitted in a statement made to Sheriff Peltier that he was at the scene of the crime. He was talking to both Albert and Marie Domres. He remembers ordering Marie Domres to take down her pants and remembers also the actual, the minutes, the seconds after the act was completed. And for that reason I believe Mr. Hagemann should—his guilty plea is made with knowledge of all those circumstances, and—

> "THE COURT: He can be identified, I presume, by the victims?

> "MR. STEVENSON: Yes, he, and Dr. Olmstead's report indicates that there is some—he called it retrograde amnesia, which would—the actual sexual act is so repugnant not only to him but to society, he is blocking, his subconscious is blocking that part of his conduct from his memory.

> "THE COURT: All right. This is your advice to him. He should enter a plea of guilty to this charge?

> "MR. STEVENSON: Yes, Your Honor."

The district court then inquired of the state's attorney as to the factual basis for Hagemann's guilty plea. The state's attorney gave a lengthy synopsis of what the evidence would establish if the case had gone to trial.[7]

> "They said they had not, and then the Defendant pulled a gun and held it on both of the victims.
> "THE COURT: What kind of gun was it?
> "MR. SILLERS: It was a pistol. I am not sure what caliber, Your Honor. He had his trigger finger on the trigger and the hammer was cocked as Albert Domres remembers.
> "He had both of the victims undress and take down their pants. And first he went to Marie Domres, and held her under gunpoint and as best as she can recall there was actually very little, if any, sexual contact between the Defendant and Marie Domres. He then

Our previous decisions provide little guidance concerning the form of evidence required to sufficiently establish a factual basis for a plea of guilty. However, in *State v. McKay,* 234 N.W.2d 853, 860 (N.D. 1975), this court stated:

"The decision on how to plead must be based on an understanding of the evidence against ... [the defendant] and of the consequences of his plea. The trial court must ensure that the facts on which defendant will base his decision are accurate and properly presented."

We conclude that summations of the evidence against Hagemann by his defense counsel and by the state's attorney were sufficient to satisfy the factual basis requirement of Rule 11(e), N.D.R.Crim.P., in the instant case.

Most courts which have addressed analogous situations have similarly concluded that such summations of the evidence are sufficient to satisfy the factual basis requirement for a guilty plea. *See, e.g., United States v. Davis,* 516 F.2d 574, 578 (7th Cir.1975) ["The requirement that there be a factual basis for the plea is satisfied, ... despite the defendant's denial of guilt, if the judge determines from the prosecutor's recital of the evidence the government will offer that proof of guilt is strong."]; *State v. Norman,* 118 Ariz. 23, 574 P.2d 491, 492–493 (Ariz.Ct.App.1978) [recitation of evidence by prosecutor, concurred in by defense counsel, adequate to establish factual basis for plea]; *Comstock v. State,* Ind. App., 422 N.E.2d 395, 399 (1981) [prosecutor's detailed recitation of the facts presenting "overwhelming evidence" of guilt creates required factual basis]; *State v. Goulette,* 258 N.W.2d 758, 761–762 (Minn.1977) [public defender's recitation in summary form of key evidence prosecution would have offered held sufficient to satisfy factual basis requirement]; *State v. Johnson,* 105 Wis.2d 657, 314 N.W.2d 897, 900 (Wis. Ct.App.1981) [*Alford* plea may be accepted without violating factual basis rule where, despite defendant's protestations of innocence, the trial court determines that the prosecutor's summary of evidence the state would offer at trial is "strong proof of guilt"]; *accord United States v. Beck,* 606 F.2d 814, 816 (8th Cir.1979).

A review of some of our cases in this area reveals that they are in substantial accord with our decision today. In *State v. DeCoteau,* 325 N.W.2d 187 (N.D.1982), we affirmed the trial court's denial of the defendant's motion to change his plea from

went to the other victim, Albert Domres, and while holding the pistol on him, the Defendant took Albert Domres penis within his mouth. Albert Domres estimated for a number of minutes, and all the time this was happening the victim asked him to stop and not to shoot them and told him he was going to faint. And he thought he was having a heart attack.

"After a number of minutes the Defendant left and just before he left the victim did faint and ultimately had a heart attack, if not at that time, after that. His wife, Marie Domres, drove into Langdon and went to the hospital.

"I am not sure if they went to the hospital—I am sure they went to the hospital and then came to the Sheriff's Office and reported the crime. One of the things they reported was a description of the Defendant's vehicle. And they were familiar with it due to the fact that the victims and the Defendant live in the west side of Langdon. They described the vehicle to the Sheriff's Office. They were already looking for this vehicle as apparently the night before the Defendant

and his wife had a disagreement and she reported his leaving to the Sheriff's Office. And they had an exact description of the vehicle and they were looking for it.

"Based on this information they went to the—they were looking for the Defendant and found his vehicle, and based on the description and on the account that Marie Domres had given them they suspected the Defendant was highly armed. And as a result of this they asked two of his friends to ask if he would turn himself in voluntarily, which he did. And they arrested him and placed him—took him into custody. The next day Agent Merle Henke from the Crime Bureau called up and he interviewed the Defendant and at that time the Defendant admitted to facts similar to what Mr. Stevenson has already stated to the Court. He admitted to remembering the victims, the Senator Young Dam and all events right up to the sexual act and events right after the sexual act.

"So, based on these facts we felt there was sufficient evidence to charge the Defendant."

guilty to not guilty. Although the defendant was intoxicated on the date of the offense and could not remember the events of the crime, the defendant pleaded guilty because his sons had told him that he participated in the crime. The evidence used to determine the factual basis of the plea in *DeCoteau* consisted of the state's attorney's summation of the evidence which the State would produce at trial and a written statement from an accomplice definitely implicating the defendant in the offense. We concluded, in *DeCoteau, supra* 325 N.W.2d at 191, that:

> "The evidence presented by the State against DeCoteau 'provided a means by which the judge could' and did determine that 'the plea was intelligently entered.' "

In *State v. Hamann,* 262 N.W.2d 495 (N.D.1978), we also affirmed the trial court's denial of defendant's motion to withdraw her plea of guilty. The defendant in *Hamann* pleaded guilty to theft of property notwithstanding her claim that she had no knowledge that the stolen items were in her apartment. We concluded that based on the State's written motion to amend the complaint, and the explanation by defense counsel of the evidence against the defendant and in support of the amended charge, the trial court had a sufficient basis to determine that there was a factual basis for her guilty plea.

Therefore, in the instant case we conclude that the summations of the evidence against Hagemann by his defense counsel and by the state's attorney were sufficient for the district court to determine that proof of guilt was strong and, thus, an adequate factual basis was established for Hagemann's guilty plea in accordance with Rule 11(e), N.D.R.Crim.P.

### III

Finally, Hagemann argues that the totality of the circumstances in the instant case indicate that he was confused and that he was not aware of the rights he was waiving and of the consequences of his plea of guilty. In support of this argument, Hagemann points to his unsupported contentions that he did not understand the nature of the plea bargain; that defense counsel and the state's attorney led him to believe that he had no other choice but to go along with the plea bargain; that he failed to understand that he would receive a six-year penitentiary sentence by pleading guilty; that he was subject to undue pressure to accept the plea bargain and did not fully understand the consequences of such plea; and that he was confused as to why he was not allowed to have a trial and present evidence.

In *State v. Gilley,* 289 N.W.2d 238, 241 (N.D.1980), we stated:

> "The burden of establishing a basis for post-conviction relief rests upon the petitioning defendant. *State v. Iverson,* 225 N.W.2d 48 (N.D.1974). *Whenever there is contradiction between the record and the unsupported assertion of an accused, the court is compelled to accept the record. State v. Hamann, supra,* 262 N.W.2d at 500." [Emphasis added.]

We find that Hagemann has failed in his proof in that it does not appear from the record of the arraignment or the change-of-plea hearing that his guilty plea, with advice of counsel, was not knowingly and intelligently entered. We cannot conclude that withdrawal of Hagemann's plea of guilty is necessary to correct a manifest injustice, *see State v. Gustafson,* 278 N.W.2d 358, 363 (N.D.1979); Rule 32(d), N.D.R.Crim.P.; and, thus, the district court did not abuse its discretion in the instant case.

Accordingly, the district court's judgment dismissing Hagemann's application for post-conviction relief is affirmed.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.