KFGO RADIO, INC. and WDAY, Inc., Plaintiffs and Appellees,

v.

Cynthia ROTHE, in her official capacity as State's Attorney for Cass County, North Dakota and Robert Hoy, in his official capacity as Assistant State's Attorney for Cass County, North Dakota, Defendants and Appellants.

Civ. No. 9764.

Supreme Court of North Dakota.

Nov. 3, 1980.

---

5. For a review of the jurisdictions dealing with the problem, *see* Larson, Workmen's Compensation Law 2A, § 76.21 (1976).

Robert G. Hoy, Asst. State's Atty., Fargo, for defendants and appellants.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for plaintiffs and appellees; argued by H. Patrick Weir, Fargo.

PAULSON, Justice.

Cynthia Rothe and Robert Hoy, the Cass County state's attorney and assistant Cass County state's attorney respectively, (hereafter referred to as the State) appeal from a judgment entered by the Cass County District Court on March 13, 1980, which permanently enjoined the State from denying access to any state's attorney's inquiry held pursuant to the provisions of § 11–16–15, N.D.C.C. The State also appeals from an order of the district court rendered on March 9, 1980, which denied the State's motion to vacate the injunction and denied the State's motion to dismiss. KFGO Radio, Inc. and WDAY, Inc. (hereafter referred to as the Media) cross–appeal from that part of the March 13, 1980, judgment which provided that the State had no affirmative obligation to publish, mail, or post notice of the pendency of state's attorney's inquiries. We affirm the judgment of the district court.

The parties to this action stipulated to the following facts:

"1. The plaintiff, KFGO Radio, Inc. and the plaintiff, WDAY, Inc. are both North Dakota corporations with their principal place of business in Fargo, Cass County, North Dakota. Plaintiff KFGO Radio, Inc. is licensed by the Federal Communications Commission to serve the public interest by broadcasting on radio from its facilities located in Fargo, North Dakota. The plaintiff WDAY, Inc. is licensed by the Federal Communications Commission to serve the public interest by broadcasting on both radio and television from its facilities in Fargo, North Dakota. In serving the public interest, both plaintiffs devote substantial time and effort to the collection and dissemination of local and regional news, including but not limited to reporting actions taken by courts, governmental bodies and their agencies.

"2. The defendant, Cynthia Rothe, is a duly elected States Attorney for Cass County, North Dakota, with full responsibility for the acts of Assistant States Attorneys under her supervision. The defendant, Robert Hoy, is a duly appointed Assistant States Attorney for Cass County, North Dakota.

"3. The plaintiffs requested that the defendants allow them to be present at a States Attorney's inquiry, pursuant to N.D.C.C. § 11–16–15 to be held on or about February 7, 1980, concerning the death of William Wolf, Jr.

"4. In response to the request, the defendants stated that the plaintiffs would not be allowed to attend the inquiry and that the inquiry would be closed.

"5. The defendants' continuing policy with respect to States Attorney's inquiry into the death of William Wolf, Jr., and future States Attorneys' inquiries, is to deny the press and general public access to said proceedings unless they are enjoined by an order of the Court."

The facts of this case revolve around the state's attorney's inquiry concerning the death of William Wolf, Jr. On February 1, 1980, Judge John O. Garaas of the Cass County District Court ordered that a witness answer questions posed to him in a state's attorney's inquiry to be held on February 7, 1980. The Media requested permission to attend the inquiry but the State denied the request. On February 7, 1980, the Media initiated this action. In their prayer for relief, the Media requested a restraining order, temporary injunction, and judgment for a permanent injunction to prevent the State from denying the Media access to a state's attorney's inquiry. The prayer for relief also requested that notice of all future state's attorney's inquiries be given as required by law.

The Cass County District Court issued a temporary restraining order and a temporary injunction pending a full hearing on the merits. On February 14, 1980, the district court heard arguments concerning the issuance of a permanent injunction and on February 21, 1980, the district court issued a memorandum opinion. The order for judgment was entered on March 9, 1980; on that same date the district court issued its order denying the state's motion to vacate the temporary injunction and the motion to dismiss the complaint for failure to state a claim. The judgment, dated March 13, 1980, provides as follows:

1. Defendants are permanently enjoined from denying the Plaintiffs or members of the general public from access to any State's Attorney's inquiry held pursuant to § 11–16–15, N.D.C.C., now or in the future.

2. Defendants have no affirmative obligation to the Plaintiffs to publish, mail, or post notice of pendency of proceedings brought pursuant to § 11–16–15, N.D.C.C.

Section 11–16–15, N.D.C.C., is silent on the issue of whether or not a state's attorney's inquiry is open to the public. Section 11–16–15, N.D.C.C., states as follows:

"*11–16–15. Criminal act causing death–Felony–Inquiry–State's attorney may subpoena witnesses. If a state's attorney shall be notified by any officer or other person, or be cognizant himself of*

any violation or criminal act causing a death, or in any manner connected therewith, or have reason to believe a felony has been committed, he may, prior to a crime being charged, inquire into the facts of such violation or criminal act, and, with the consent and approval of the district judge of the county, for such purpose he may issue a subpoena for any person who he has reason to believe has any information or knowledge of such violation, to appear before him at a time and place designated in such subpoena, then and there to testify concerning any such violation. The subpoena shall be directed to the sheriff or any constable of the county and shall be served and returned to the state's attorney in the same manner as subpoenas are served and returned in criminal cases. Each witness shall be sworn by the state's attorney to testify under oath, and to make true answer to all questions which may be propounded to him by such state's attorney touching any such violation or criminal act. The testimony of every witness shall be reduced to writing, and shall become a part of the coroner's files in the case of a death and of the state's attorney's files in all other cases. For all purposes in this section the state's attorney may:

"1. Administer oaths or affirmations to all witnesses.

"2. Apply to the district court for the punishment of any witness for contempt for or on account of any disobedience of a subpoena, a refusal to be sworn, or to answer as a witness, or a refusal to sign his testimony.

"3. Compel the attendance of witnesses by attachment in the manner and with the effect provided in title 27. Any witness compelled to testify under the provisions of this section shall be entitled to counsel and all other constitutional rights."

Section 11–16–15, N.D.C.C., was originally enacted as Section 11–19A–09, which was adopted in 1955 as a part of the chapter concerning medical county coroners. See 1955 S.L., Ch. 115 § 9. Section 11–19A–09

remained in Chapter 11–19A (codified today as Chapter 11–19.1) until 1973 when it was repealed and reenacted as Section 11–16–15, N.D.C.C. See 1973 S.L., Ch. 92. On February 23, 1972, the Attorney General issued an opinion in which he asserted that the state's attorney's inquiry authorized under Section 11–19A–09 was open to the public. The Attorney General asserted the following reason for his conclusion:

"In the absence of any further description of a state's attorney's inquest, or statutory or constitutional provisions relating thereto, and because the inquest is authorized under Chapter 11–19A, concerning coroner's duties and functions, and in most instances the inquest is held in conjunction with the coroner's inquest, we are inclined to apply the principles of law pertaining to coroner's inquests to cover the state's attorney's inquest."

At another point in his opinion the attorney general stated:

"It should be noted that the testimony of every witness shall be reduced to writing and shall become a part of the coroner's files in such case. The last sentence in Section 11–19A–08 provides that 'All records of said office shall become and remain the property of the county, and shall be considered public records.' The foregoing provisions clearly indicate that the records of the coroner are considered public records."

The attorney general reasoned that the coroner's office was a governmental body and that the provisions of §§ 44–04–18 and 44–04–19, N.D.C.C., which relate to access to public records and open governmental meetings, applied to coroner's proceedings and to state's attorney's inquiries by virtue of the inclusion of § 11–19A–08 in Chapter 11–19A. The Attorney General also stated that in the instances where the legislature intended hearings or proceedings to be held which excluded the public it had provided for exclusion of the public by appropriate language. Because such language was not included in § 11–19A–08, N.D.C.C., the state's attorney's inquiry was open to the public.

The Attorney General's opinion served as the basis for the district court's memorandum opinion. However, the district court asserted several other grounds for granting the permanent injunction. Section 22 of the Constitution of North Dakota provides that "All courts shall be open . . . ." The district court reasoned that the above language, coupled with § 27–01–02, N.D.C.C., served as secondary authority for the district court's conclusion that state's attorney's inquiries were open to the public.

Two issues are presented for our determination. First: Are state's attorney's inquiries open to the public or may the public be excluded from them? Secondly: If state's attorney's inquiries are required to be open to the public, what type of notice of the proceeding must be given?

I.

On appeal, the State argues that the district court erred as a matter of law in finding that the state's attorney's inquiry under § 11–16–15, N.D.C.C., was a part of the coroner's proceedings.[1] The State bases its argument on the fact that former § 11–19A–09, N.D.C.C., was repealed and reenacted as § 11–16–15, N.D.C.C., in 1973. The State contends that § 11–19A–09 was transferred from Chapter 11–19A, N.D.C.C., to Chapter 11–16, N.D.C.C., because of the Attorney General's opinion which concluded that state's attorney's inquiries were open to the public. Because § 11–19A–09 was transferred, the State contends that the legislature sought to exclude members of the public from state's attorney's inquiries. The State also contends that the Attorney General's opinion cannot be used to construe § 11–16–15, N.D.C.C., because of the changes which occurred when § 11–19A–09, N.D.C.C., was repealed and reenacted as § 11–16–15, N.D.C.C.

Section 11–16–15, N.D.C.C., requires that the testimony of every witness in a state's attorney's inquiry be reduced to writing and, in the case of a state's attorney's inquiry into the cause of a death, that the writing be made a part of the coroner's files. Section 11–19.1–08, N.D.C.C., states that "All records of said office of the coroner shall become and remain the property of the county, and shall be considered public records." The State argues that the testimony given at state's attorney's inquiries is filed with the coroner only in cases where a death is involved and not in all cases. The State also argues that § 11–16–15, N.D.C.C., is separate from the coroner's proceedings because § 11–16–15 is contained in Chapter 11–16, which deals with the duties of the state's attorney.

■ The district court's reliance upon the argument that a state's attorney's inquiry is open to the public because it is a part of the coroner's proceedings is unjustified. The inquiry procedure is now available to a state's attorney in all felony cases and not just in those cases where a death is involved. In addition, § 11–16–15, N.D.C.C., is now codified in Chapter 11–16, N.D.C.C., dealing with the duties of a state's attorney. Only the testimony taken at a state's attorney's inquiry becomes a part of the coroner's files. Although the state's attorney's inquiry remains connected with the coroner's proceedings in limited instances, § 11–16–15, N.D.C.C., represents a significant expansion of the scope of a state's attorney's inquiry. In view of these differences, we cannot conclude that a state's attorney's inquiry is a part of the coroner's proceedings listed in Chapters 11–19 and 11–19.1, N.D.C.C. However, we have held in prior cases that a judgment will not be reversed merely because it rests upon inapplicable reasons. *Damm v. National Insurance Company of America*, 200 N.W.2d 616 (N.D.1972); *McGuire v. Warden of State Farm*, 229 N.W.2d 211 (N.D.1975).

The district court relied upon § 22 of the North Dakota Constitution as a basis for its

---

1. Section 11–19A–09, N.D.C.C., was adopted in 1955 as a part of the new Chapter 11–19A, Medical County Coroners [S.L.1955, ch. 115, § 9]. Section 11–19A–09 N.D.C.C., remained in Ch. 11–19A (codified today as Ch. 11–19.1, N.D.C.C.) until 1973 when it was repealed and reenacted in Ch. 11–16 as § 11–16–15, N.D.C.C. [S.L.1973, ch. 92]. In 1979 the legislature amended § 11–16–15, N.D.C.C., to its present form.

ruling that state's attorney's inquiries are open to the public.[2] The State contends that this reliance is unjustified because the requirement that "All courts shall be open" merely stands for the proposition that all potential litigants be guaranteed free access to the courts. *Malin v. LaMoure County*, 27 N.D. 140, 145 N.W. 582 (1914). The Media contend that the language contained in § 22 of the Constitution which specifies that all courts shall be open, coupled with language contained in § 27–01–02, N.D.C.C.,[3] requires that a state's attorney's inquiry be open to the public.

In order to reach the argument that a state's attorney's inquiry is open to the public, the Media must establish the premise that a state's attorney's inquiry can be equated to the function of a court. The primary purpose of the inquiry is to investigate deaths and felonies. The investigatory function served by the inquiry is separate from the adjudicatory processes associated with the courts. This court held in *Kittler v. Kelsch*, 56 N.D. 227, 216 N.W. 898 (1927), that a state's attorney is a quasi–judicial officer. Black's Law Dictionary 5th Edition [1979] defines the term "quasi–judicial" as "A term applied to the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." The term "quasi–judicial act" is defined as "A judicial act performed by one not a judge."

When a state's attorney conducts an inquiry authorized by § 11–16–15, N.D.C.C., the state's attorney is acting in a quasi–judicial capacity. Under § 11–16–15, the state's attorney is given discretion to inquire into facts surrounding a felony or a criminal act causing a death. The state's attorney may subpoena witnesses to testify before him concerning any felony violation. The testimony presented at the inquiry may serve as the foundation for bringing a criminal charge. The quasi–judicial nature of the state's attorney's inquiry is further evidenced by the ancillary authority which the state's attorney can exercise. Section 11–16–15, N.D.C.C., authorizes the state's attorney to administer oaths or affirmations to all witnesses. The state's attorney may compel the attendance of witnesses. Finally, the state's attorney may apply to the district court for the punishment of any witnesses for contempt. The district court also exercises a fundamental role in a state's attorney's inquiry because only the district court may exercise its contempt power. The state's attorney's inquiry involves actions which are quasi–judicial in nature, *i. e.*, judicial acts performed by one not a judge. Thus, the state's attorney's inquiry is clearly connected with the functions of a court even though its primary purpose is investigatory in nature.

 The state's attorney's inquiry is within the scope of the provision of § 22 of the Constitution of North Dakota which states that all courts shall be open. While we have interpreted § 22 of the Constitution in a number of cases, we have not been confronted with the issue presented in this case which deals with extending access to court proceedings to members of the public. Apparently § 22 of the Constitution of North Dakota sought to paraphrase language contained in the Magna Charta which stated "To none will we sell, to none will we deny, or delay, right or justice." *Malin v. LaMoure County*, 27 N.D. 140, 145

---

**2.** Section 22 of the Constitution of North Dakota provides:

"All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct."

**3.** Section 27–01–02, N.D.C.C., provides:

"*27–01–02. Sittings of courts public–When public may be excluded.*–The sittings of every court of this state shall be public, and every citizen may freely attend the same, except that on the trial of cases of a scandalous or obscene nature the presiding judge or justice, in his discretion, may exclude therefrom all persons not necessarily present as parties or witnesses."

N.W. 582 (1914). The English common law rule of open proceedings became embodied in colonial charters and State constitutions in America. The 1676 New Jersey Constitution provided in Chapter XXIII for the right of the public to attend trials. The language in the New Jersey Constitution—or more accurately, the Charter or Fundamental Laws, of West New Jersey—was adopted in subsequent State constitutions as the command that "all courts shall be open". *See, e. g.*, 1682 Frame of Government of Pennsylvania, Article V; 1776 Constitution of Pennsylvania, § 26; 1777 Constitution of Vermont, Ch. II, § XXIII; 1792 Constitution of Kentucky, Article XII, § 13; 1802 Constitution of Ohio, Article VIII, § 7; and 1870 Constitution of Tennessee, Article I, § 17. Similarly, Article I, § 10 of the Constitution of Washington states that "Justice in all cases shall be administered openly, and without unnecessary delay". In *Cohen v. Everett City Council*, 85 Wash.2d 385, 535 P.2d 801 (1975); and in *Federated Publications, Inc. v. Kurtz*, 94 Wash.2d 51, 615 P.2d 440 (1980), the Washington Supreme Court held that the provision entitles the public to attend not only trials, but also all judicial proceedings.

The uniform interpretation of the "all courts shall be open" language is that the language confers an independent right of the public to attend court proceedings. *See, e. g., State v. Copp*, 15 N.H. 212 (1844); *Lecates v. Lecates*, 8 W.W.Harr. 190, 38 Del. 190, 190 A. 294 (1937); *State v. Holm*, 67 Wyo. 360, 224 P.2d 500 (1950); *Brown v. State*, 222 Miss. 863, 77 So.2d 694 (1955); *E. W. Scripps Co. v. Fulton*, 100 Ohio App. 157, 125 N.E.2d 896 (1955); *Phoenix Newspapers, Inc. v. Superior Court*, 101 Ariz. 257, 418 P.2d 594 (1966); *Johnson v. Simpson*, 433 S.W.2d 644 (Ky.1968); *Cohen v. Everett City Council*, 85 Wash.2d 385, 535 P.2d 801 (1975); *In re Edens*, 290 N.C. 299, 226 S.E.2d 5 (1976); and *State ex rel. Herald Mail Co. v. Hamilton*, 267 S.E.2d 544 (W.Va. 1980). Thus, the provision in Article I, § 22 of the Constitution of North Dakota which states that "all courts shall be open" stands for the proposition that officers of the courts, along with jurors, witnesses, litigants, and the general public have the right of admission to court proceedings. Because we have equated the state's attorney's inquiry to the function of a court, we conclude that the state's attorney's inquiry must be open to the public in order to comply with Article I, § 22 of the Constitution of North Dakota. The "all courts shall be open" language is not applicable to the state's attorney's general authority to investigate into the commission of probable crimes where the power of subpoena and the power of the court to punish for contempt are not involved. The right of access accorded the public must also be accorded to the media because the media not only constitute a part of the general public but also operate as agents or surrogates for the general public in gathering and disseminating information.

Our conclusion is supported by the general policy of our law which favors open court proceedings. This policy was fostered by the abuses of the Spanish Inquisition; the English Court of Star Chamber; and the French monarchy's *lettre de cachet*, which consisted of an order by a monarch which allowed the indefinite imprisonment or exile of a particular person without that person being given the opportunity to defend himself. The star chamber proceedings have never been favored under our judicial system because the means used to achieve justice must have the support derived from acceptance of the process used to attain justice. Open court proceedings serve to educate the public on the law. Open court proceedings also serve to assure the public as well as the litigants that the proceedings were conducted fairly. Jeremy Bentham recognized the principle when he wrote:

> "Without publicity, all the checks are insufficient: in comparison of publicity, all other checks are of small account. Recordation, appeal, whatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance." 1 J. Bentham, Rationale of Judicial Evidence 524 (1827).

The State contends that if the information revealed during an inquiry is disseminated among members of the public, it would preclude the apprehension of those persons responsible for committing the crime. The State also contends that the presence of the public at the inquiry could create publicity of such a nature as to prejudice a defendant's right to a fair trial. The prospect of publicity which serves to prevent the apprehension of criminals is indeed a valid and important consideration in our decision. However, the countervailing considerations of maintaining judicial integrity and educating the public outweigh the dangers of criminals escaping apprehension. The State has available the alternative of grand jury proceedings, which, under Chapter 29–10.1, N.D.C.C., require that the proceedings be closed and secretive in nature. It is also true that adverse publicity could endanger the ability of a prospective defendant to receive a fair trial. *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); *Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). However, the prospect of adverse publicity is another factor which we have considered against the countervailing considerations outlined above. Because judicial proceedings are events of legitimate public concern, the state's attorney's inquiry authorized by § 11–16–15, N.D.C.C., is open to the public. *See State v. Teigen*, 289 N.W.2d 242 (N.D.1980). Section 11–16–15 provides that a witness compelled to testify at the inquiry is entitled to the presence of counsel. If at any point the procedure used would violate the witness's rights, the witness's counsel would be available to object or otherwise assure that the proceeding was conducted fairly.[4] The effects of publicity are mitigated by change of venue, voir dire, peremptory challenges, sequestration, and admonition of the jury.

The State contends that § 27–01–02, N.D. C.C., does not apply to a state's attorney's inquiry because § 27–01–02 applies only to "the sittings of every court of this state". Section 27–01–01, N.D.C.C., defines the courts which constitute the judicial system of the State.[5] Because a state's attorney's inquiry is not listed as a court of justice, the State contends that § 27–01–02 does not require that the inquiry be open to the public. The quasi-judicial nature of the inquiry leads us to draw the conclusion that the inquiry is a judicial function. Whenever a subpoena is issued by a state's attorney's office, it must first be approved by the district court. Furthermore, the right to hold a recalcitrant witness in contempt of court lies solely within the power of the district court. The inquiry is so closely intertwined with the district court and court proceedings that it is within the ambit of provisions which require courts to be open to the public.

Although we have established that the "all courts shall be open" language of Article I, § 22 of the Constitution of North Dakota provides to the public a right of access to court proceedings, limitations have been placed upon public access to judicial proceedings. It is generally agreed that the size of the courtroom may justifiably limit

4. Two recent North Dakota cases concern the effect of pretrial publicity. In *Houle v. North Dakota District Court*, 293 N.W.2d 872 (N.D. 1980), we stated that a change of venue based upon pretrial publicity is warranted only if it is shown that the publicity was prejudicial to the defendant. In *State v. LaFontaine*, 293 N.W.2d 426 (N.D.1980), we stated that a defendant in a criminal case has no right to appeal from an interlocutory order denying his motion to close pretrial proceedings.

5. We note that Article IV, § 85 of the Constitution of North Dakota states that "The judicial power of the state is vested in a unified judicial system consisting of a supreme court, a district court, and such other courts as may be provided by law." The courts of this State comprise a number of courts which is greater than the number of courts specified in § 27–01–01, N.D. C.C. For instance, county courts of increased jurisdiction, family courts, juvenile courts, and small claims courts are not enumerated under § 27–01–01, yet they are considered courts of the State. Certainly the sittings of the county courts of increased jurisdiction are open to the public. Thus, the State's argument that § 27–01–01, N.D.C.C., defines the courts whose proceedings must be public is without justification.

attendance. Note: The Right to a Public Trial in Criminal Cases, 41 N.Y.U.L.Rev. 1138 (1966). In the interest of fairness, a court may exclude from the courtroom members of the public who are creating physical disturbances or causing potentially dangerous situations. The limitations imposed are required to effectuate the essential dignity and integrity of the judicial process. On occasion, publicity has mandated reversal in favor of the defendant because media coverage gave inordinately wide dissemination of critical information at crucial times. *Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); *Sheppard v. Maxwell*, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Thus, the right of access to judicial proceedings is limited both by the constitutional right to a fair trial and by the needs of government to obtain just convictions and to preserve the confidentiality of sensitive information and the identity of informants. *C. F. Houchins v. K.Q.E.D.*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (Stevens, J., dissenting).

Other instances exist which demonstrate that the right of access to judicial proceedings is not absolute. Incidental or collateral discussions are held outside the presence of a jury, such as conferences on points of law or conferences in chambers. Section 27–01–02, N.D.C.C., provides that in trials of a scandalous or obscene nature, the presiding judge may exclude all persons not necessarily present as parties or witnesses. In *In re Lewis*, 51 Wash.2d 193, 316 P.2d 907 (1957), the court found no constitutional objection to excluding the public from a juvenile court hearing. A literal interpretation of Article I, § 22 of the Constitution of North Dakota would wreak havoc with established judicial practices in that it would allow public access to all phases of the administration of justice, including chambers' conferences, plea bargaining and settlement

conferences, adoption proceedings, those juvenile proceedings presently closed, grand jury proceedings, and appellate court conferences. In addition, judicial propriety requires that parties not disclose their case in advance of trial to the press. It is clear that absolute access and open courts are different concepts; we do not read the "all courts shall be open" language in absolute terms.

Article I, § 13 of the Constitution of North Dakota states that the accused shall have the right to a speedy and public trial. The Media contend that the state's attorney's inquiry is closely allied to court functions and Article I, § 13 of the Constitution requires that the inquiry be open to the public. Article I, § 13 of the Constitution is not applicable to the facts in this case because the inquiry cannot be equated to a trial. However, the same policy reasons which require trials to be open to the public also apply to the state's attorney's inquiry.[6] The Media contend that the inquiry provided for by § 11–16–15, N.D.C.C., is subject to North Dakota's open meeting law, which is contained in § 44–04–19, N.D.C.C. Section 44–04–19 applies to all meetings of "public or governmental bodies, boards, bureaus, commissions, or agencies of the state or any political subdivision of the state, or organizations or agencies supported in whole or in part by public funds, or expending public funds".

■ Because the meetings coming within the provisions of § 44–04–19, N.D.C.C., must be open to the public, a state's attorney's inquiry would also be open to the public if it came within the scope of § 44–04–19. The legislative history surrounding the enactment of § 44–04–19, N.D.C.C., does not indicate that the state's attorney's inquiry is subject to § 44–04–19.

---

**6.** The United States Supreme Court has recently decided two cases concerning the right of access to court proceedings. In *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), the Supreme Court held that the Sixth Amendment's guarantee of a public trial gave neither the public nor the press an enforceable right of access to a pre-trial suppression hearing. In *Richmond Newspapers, Inc. v. Virginia*, —— U.S. ——, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the Supreme Court held that the right of the public and press to attend criminal trials is guaranteed under the First and the Fourteenth Amendments to the United States Constitution.

Our decisions in *Southern Valley Grain Dealers v. Board of County Commissioners,* 257 N.W.2d 425 (N.D.1977); *Dickinson Educational Assn. v. Dickinson Public School District No. 1,* 252 N.W.2d 205 (N.D.1977); and *Peters v. Bowman Public School District No. 1,* 231 N.W.2d 817 (N.D.1975), do not indicate that the inquiry should be open to the public under the provisions of the open meeting law provided for by § 44–04–19, N.D.C.C.[7]

■ In part, our decision to open the state's attorney's inquiry to the public is based upon the absence of legislation which requires that the inquiry be closed to the public. In other instances, the legislature has seen fit to expressly direct that the public be excluded from court proceedings. Thus, the public is excluded from juvenile court proceedings under § 27–20–24, N.D.C.C. Section 29–10.1–28, N.D.C.C., provides that grand jury sessions must be held in secret. Section 29–10.1–30, N.D.C.C., requires that grand jurors maintain secrecy regarding grand jury proceedings. No provision providing for exclusion of the public is contained in § 11–16–15, N.D.C.C. In view of the policy considerations which favor open court proceedings and the absence of a directive from the legislature to exclude the public from state's attorney's inquiries, we conclude that state's attorney's inquiries, under § 11–16–15, N.D.C.C., are open to the public and that the district court properly granted the permanent injunction in the instant case.

## II.

■ The second issue concerns the notice provision. Because § 44–04–19, N.D.C.C., is inapplicable to the state's attorney's inquiry, the notice provision contained in § 44–04–20, N.D.C.C., is also inapplicable. Because we have determined that a state's attorney's inquiry is quasi–judicial in nature, we conclude that the state's attorney is not required to give notice of pending state's attorney's inquiries to the media or to the public. However, we are not pre-

cluding the state's attorney from giving notice to the media or to the public should the state's attorney voluntarily decide to give such notice.

For reasons stated in this opinion, we affirm the judgment of the district court.

ERICKSTAD, C. J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

I have no dispute with the results reached in the majority opinion, but I do not agree that § 22 of the North Dakota Constitution requires either judicial or quasi–judicial proceedings to be open. The Legislative Assembly has not authorized closed inquiries under § 11–16–15, NDCC, and state's attorneys do not have implied powers to close proceedings to protect constitutional rights as courts do in very limited circumstances.

---

7. *See also* Guy and McDonald, Government in the Sunshine: The Status of Open Meetings and Open Records Laws in North Dakota, 53 N.D.L.Rev. 51 (1975).