STATE of North Dakota, Plaintiff
and Appellee,

v.

Herbert O. JENSEN, Defendant
and Appellant.

Crim. No. 892.

Supreme Court of North Dakota.

April 19, 1983.

Herbert O. Jensen, pro se.

Vincent A. LaQua, State's Atty., Fessenden, Robert J. Udland (argued) and John E. Jacobson, Asst. Attys. Gen., Bismarck, for plaintiff and appellee.

PAULSON, Justice.

Herbert O. Jensen, appearing pro se, appeals from a "judgment" of the District Court of Wells County denying his applications for post-conviction relief and his motion for a new trial. We dismiss the appeal as to the trial court's denial of his applications for post-conviction relief and affirm the trial court's denial of his motion for a new trial.

On November 18, 1974, Jensen was charged with two counts of murder in the first degree. The charges stemmed from the shooting deaths of Dale Abraham and Ernest Vivier, whose bodies were discovered during the early morning hours of November 16, 1974, lying on the shoulder of U.S. highway 52, approximately four miles west of Harvey. After the state had presented its case in chief during the trial before a jury, the court ordered that the charges be reduced to murder in the second degree. The jury found Jensen guilty on

both counts and he was subsequently sentenced to twenty years' imprisonment on each count and an additional ten years' confinement on each count as a dangerous special offender. The sentences were ordered to be served concurrently. Jensen appealed his convictions to our court, and in an opinion dated February 17, 1977, we reversed and remanded the case for a new trial based upon improper instructions to the jury and prejudicial error in the exclusion of evidence. *See State v. Jensen,* 251 N.W.2d 182 (N.D.1977).

At the commencement of his second trial, on October 4, 1977, the State filed two criminal informations charging Jensen with murder in the second degree. A jury, on October 19, 1977, found him guilty on both counts, and he was again sentenced to twenty years' imprisonment on each count, with ten years added on each count pursuant to his classification as a dangerous special offender. The sentences run concurrently. Jensen appealed to this court, and in an opinion dated July 18, 1979, his convictions were affirmed. *See State v. Jensen,* 282 N.W.2d 55 (N.D.1979).

On January 16, 1981, and on February 18, 1981, respectively, Jensen filed an "Application for Post-Conviction Hearing" and an "Application for Post-Conviction Hearing Supplement", pursuant to the provisions of the Uniform Post-Conviction Procedure Act, Chapter 29–32 of the North Dakota Century Code. Jensen also filed a motion for a new trial pursuant to Rule 33 of the North Dakota Rules of Criminal Procedure, on July 2, 1982. His applications for post-conviction relief and motion for a new trial allege numerous constitutional and statutory violations which he contends occurred during the proceedings that ultimately led to his convictions and subsequent incarceration in the North Dakota State Penitentiary. Jensen appeared pro se and his applications and motion were heard together by the District Court of Wells County on July 6, 1982, and on August 23, 1982.[1]

At the close of the August 23 hearing, the district court orally announced its findings and order denying the applications for post-conviction relief and motion for a new trial, and directed that counsel for the State prepare a written order for judgment and order denying the applications and motion. On August 30, 1982, Jensen filed his notice of appeal, which was dated August 25, 1982, and which stated in part:

"COMES NOW the defendant Herbert O. Jensen pursuant to NDAppP Rule 3, from judgment of Judge Benny Graff on defendants post-conviction hearing held August 23, 1982, to the North Dakota Supreme Court."

The written findings of fact, conclusions of law, and order denying Jensen's applications for post-conviction relief and motion for a new trial was signed by the trial court on September 16, 1982. Personal service of the document was made upon Jensen on September 20, 1982.

■ Although the State has not raised the issue of the appealability of the trial court's ruling, it is the duty of this court to dismiss the appeal on our own motion if we conclude that the attempted appeal fails to grant jurisdiction. *State v. Lawson,* 321 N.W.2d 514, 515 (N.D.1982); *In Interest of D.R.J.,* 317 N.W.2d 391, 392 (N.D.1982); *Simpler v. Lowrey,* 316 N.W.2d 330, 333 (N.D.1982); *Center State Bank, Inc. v. State Bank Bd.,* 276 N.W.2d 132, 134 (N.D. 1979); *In Re Estate of Brudvig,* 175 N.W.2d 574, 577 (N.D.1970), *overruled on other grounds, Liebelt v. Saby,* 279 N.W.2d 881, 884 (N.D.1979). Upon examining the circumstances present here, we conclude that Jensen's appeal from the denial of his applications for post-conviction relief is premature because his notice of appeal related to an occurrence which had not yet matured into an appealable event.

■ This case is somewhat similar to the situation in *State v. Gasser,* 306 N.W.2d 205 (N.D.1981). In *Gasser, supra,* the trial court, following arguments by the State

---

1. Although Jensen appeared pro se on most of the issues raised, he was represented by counsel on the issue of the legality of his sentence.

and the defendant, who also appeared pro se, determined that the State was entitled to summary judgment. The court orally issued its memorandum decision from the bench and directed that the State prepare appropriate findings of fact, conclusions of law, and order for judgment. One week after the hearing on the State's motion for summary judgment, but a month before either the trial court signed a written order or judgment was entered, the defendant filed his notice of appeal, similarly stating that the appeal was " 'from the judgment rendered against him in this court on August 28, 1980' ". *Gasser, supra* 306 N.W.2d at 207. The State in *Gasser* filed a motion to dismiss the defendant's appeal, claiming the defendant was appealing from an oral ruling made by the trial court from the bench and that, therefore, the appeal stemmed from a nonappealable intermediate ruling by the trial court. We agreed and dismissed the appeal, reasoning in *Gasser, supra* 306 N.W.2d at 207–208 that:

> "In the present case we must conclude that if an order for entry of summary judgment is not appealable, then certainly an oral recitation from the trial court bench indicating that such an order will be issued cannot be elevated to appealable status. On that basis, this court is without jurisdiction to proceed further on the matter."

Although *Gasser* involved an attempted appeal from the granting of a motion for summary judgment, we believe the court's reasoning is equally applicable in Jensen's attempted appeal from the denial of his applications for post-conviction relief under Chapter 29–32, N.D.C.C. Section 29–32–07, N.D.C.C., provides that all rules and statutes applicable in civil proceedings are available to the parties in a post-conviction proceeding. Therefore, Rule 37(b), N.D.R. Crim.P., and Rule 4(b) of the North Dakota Rules of Appellate Procedure have no application in the instant case and cannot cure the jurisdictional defect of the appeal in

this regard. *State v. Tinsley,* 325 N.W.2d 177, 179 n. 2 (N.D.1982).

■ In view of the fact that Jensen's appeal from the denial of his applications for post-conviction relief was taken before any final order was entered as required by § 29–32–07, N.D.C.C., the appeal must be dismissed as premature.

■ The same does not hold true, however, in regard to that portion of Jensen's appeal which relates to the denial of his motion for a new trial. While a motion under the Uniform Post-Conviction Procedure Act is treated as an independent civil action, *see* § 29–32–07, N.D.C.C., a motion for a new trial under Rule 33, N.D.R. Crim.P., is a step in a criminal proceeding. Rule 37(b), N.D.R.Crim.P., provides in pertinent part:

> "A notice of appeal filed after the announcement of the verdict, decision, sentence, or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof."

*See also* Rule 4(b), N.D.R.App.P. Thus, even though Jensen filed his notice of appeal on August 30, 1982, we treat that portion of his notice of appeal which relates to the trial court's order denying his motion for a new trial[2] as if it were filed on September 16, 1982, the date the trial court order was actually entered. Therefore, that portion of the trial court's order is properly before us for review.

Although we have concluded that Jensen's appeal from the trial court's denial of his applications for post-conviction relief, as opposed to the denial of his motion for a new trial, is not properly before this court, we are cognizant of the fact that the six-month time period during which Jensen could conceivably have corrected the defect in the timing of his notice of appeal has expired. See § 29–32–09, N.D.C.C. Both parties have also fully briefed and argued

---

**2.** Orders denying Jensen's applications for post-conviction relief and motion for a new trial were not separately issued. The district court's "Findings of Fact, Conclusions of Law,

and Order" dated September 16, 1982, briefly addresses the allegations in both Jensen's applications for post-conviction relief and his motion for a new trial.

the merits. We will therefore discuss the issues raised on the merits by the parties.[3]

## I

Jensen argues that, because he made preliminary appearances before a judge in Ramsey County on November 16, 1974, following his arrest, and then again before a judge in Wells County on November 18, 1974, he was twice placed in jeopardy in violation of State and Federal law. *See* U.S. Const. amend. V; N.D. Const. art. I, § 12; § 29–01–07, N.D.C.C. This claim is without merit.

■ It has long been established that jeopardy does not attach in criminal proceedings until the defendant's trial commences, which in a jury trial occurs when the jury is empaneled and sworn, and in a nonjury trial when the court begins to hear the evidence. *Crist v. Bretz,* 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24, 33 (1978); *Illinois v. Somerville,* 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425, 433 (1973); *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957); *Wade v. Hunter,* 336 U.S. 684, 688, 69 S.Ct. 834, 836, 93 L.Ed. 974, 978 (1949); *State v. Berger,* 235 N.W.2d 254, 257 (N.D.1975), *cert. denied,* 425 U.S. 913, 96 S.Ct. 1511, 47 L.Ed.2d 764 (1976); *State v. Allesi,* 216 N.W.2d 805, 813 (N.D.1974). In the present case, Jensen's trial did not begin until several months after his preliminary appearances before the judges in Ramsey and Wells Counties.

■ In this regard, Jensen also argues that, because he was not taken before the nearest and most accessible magistrate in McHenry County, where he was initially arrested, but was taken to Ramsey County instead, § 29–06–25, N.D.C.C., and Rule 5(a), N.D.R.Crim.P., were violated. Jensen does not contend that there was any unnecessary delay involved, but only that he was not taken to the "nearest or most accessible

magistrate in the county where the arrest is made". § 29–06–25(1), N.D.C.C. A violation of the express terms of § 29–06–25, N.D.C.C., does not, in itself, entitle a defendant to post-conviction relief in the absence of a showing that he was deprived of a fair trial or was otherwise prejudiced as a result of the error. *State v. Rudolph,* 193 N.W.2d 237, 240 (N.D.1971); *State v. Barlow,* 193 N.W.2d 455, 461 (N.D.1971). Jensen has shown neither that he was denied a fair trial nor that he was prejudiced in any other way as a result of the alleged error.

## II

■ Jensen further argues that he was denied due process because of the procedures employed before the commencement of his second trial on October 4, 1977. He basically contends that he did not receive a preliminary examination and that he was not properly arraigned in conjunction with the two "new" charges of second-degree murder which were filed against him. Jensen does not claim that he was not provided a preliminary hearing or that he was not properly arraigned before his first trial, nor does he claim that his trial counsel were not prepared to proceed with the second trial.

Before the second trial began on October 4, 1977, the trial judge met in his chambers with the defendant, his counsel, and counsel for the State. At that time the State filed the two criminal informations without objection from defense counsel. Jensen and his counsel were given copies of the informations and his counsel waived the reading of the informations. Both Jensen and his counsel agreed that it was unnecessary to readvise the defendant of his rights. This informal proceeding concluded with Jensen pleading not guilty to both charges of second-degree murder. Throughout the entire pre-trial proceeding, neither Jensen nor his counsel made any objections, motions, or requests regarding the lack of a preliminary hearing or a formal arraignment.

---

3. Our discussion of the merits relating to Jensen's applications for post-conviction relief should not be considered a precedent in the future. *See State v. Tinsley,* 325 N.W.2d 177, 179 n. 3 (N.D.1982); *In Interest of R.A.S.,* 321 N.W.2d 468, 470 n. 1 (N.D.1982); *Piccagli v. North Dakota State Health Dept.,* 319 N.W.2d 484, 487 (N.D.1982); *Burich v. Burich,* 314 N.W.2d 82, 83 (N.D.1981); *State v. Gasser,* 306 N.W.2d 205, 208 (N.D.1981).

We believe that Jensen has impliedly waived his right to a preliminary hearing before the second trial. This court has held in the past that the right to a preliminary hearing is purely statutory and not constitutional in nature. *State v. Bourbeau,* 250 N.W.2d 259, 266 (N.D.1977); *State v. Persons,* 201 N.W.2d 895, 897 (N.D.1972); *State v. Rudolph,* 193 N.W.2d 237, 241 (N.D.1971). A waiver of the right to a preliminary hearing occurs unless the defendant, before entering his plea to a criminal information, objects to the information on that ground. *See Rudolph, supra* 193 N.W.2d at 242; § 29–09–02(3), N.D.C.C.; Rule 12, N.D.R. Crim.P. No such objection appears in the record.

We also conclude that the fact that Jensen was not arraigned in *open court* before his second trial does not constitute grounds for post-conviction relief in this case. *See* Rule 10, N.D.R.Crim.P. The record reveals that the trial judge, in his chambers and in the presence of counsel, asked Jensen for his plea. Jensen responded by pleading not guilty to both of the charges. The circumstances in this case are thus distinguishable from those present in *State v. Wester,* 204 N.W.2d 109 (N.D.1973), in which no plea was requested by the judge and no plea was ever entered by the defendant.

Therefore, Jensen's argument regarding the lack of a preliminary hearing and arraignment in open court before his second trial is without merit.

### III

Jensen next claims that he was improperly denied the opportunity to utilize the Rules of Civil Procedure in attempting to obtain materials which he contends are discoverable under Chapter 29–32, N.D.C.C., the Uniform Post-Conviction Procedure Act, which incorporates civil pre-trial and discovery procedures. *See* § 29–32–07, N.D.C.C.

During the two-year course of the proceedings below, Jensen employed various discovery procedures, including requests for the production of documents and interrogatories. *See* Rules 33 and 34, North Dakota Rules of Civil Procedure. When his efforts proved unsuccessful, he applied for an order compelling discovery under Rule 37, N.D.R. Civ.P., which was denied by the district court. Jensen also filed numerous applications for subpoenas duces tecum which were also denied by the court. The discovery procedures and subpoenas were directed toward various state, county, and city officials, law enforcement officers, judges and court staff, and Jensen's trial counsel requesting items and responses too numerous to mention here. In denying Jensen's requests, the district court basically determined that the various procedures utilized by Jensen sought materials which were irrelevant to his post-conviction proceedings. *See* Rule 26(b)(1), N.D.R.Civ.P. Upon reviewing Jensen's requests, we agree and therefore conclude that the district court did not abuse its discretion.

### IV

Jensen also argues that the attorney general should not have been allowed to represent the State in his post-conviction proceedings. He contends that there was no formal request from the Wells County state's attorney to have the attorney general assist in this case, as he contends is required by law. Section 54–12–01(5), N.D. C.C., provides that the attorney general shall "Attend the trial of any party accused of crime and assist in the prosecution when in his judgment the interests of the state require it." Although § 54–12–01(5), N.D. C.C., appears to speak in terms of the actual trial of a defendant, we believe that this duty logically extends to post-conviction proceedings brought under Chapter 29–32, N.D.C.C., in which a defendant alleges that errors or defects occurred during the criminal trial which led to defendant's conviction and subsequent incarceration. Thus, Jensen's claim is without merit.

### V

Jensen contends that he was denied due process by the failure of the court

reporter to record the opening and closing arguments in his second trial.

We initially note that Jensen raised this issue by means of a motion for a new trial under Rule 33, N.D.R.Crim.P., and not as an issue in his "Application for Post-Conviction Hearing" or "Application for Post-Conviction Hearing Supplement". Rule 33 provides that a motion based upon newly discovered evidence or jury misconduct must be made within 30 days after discovery of the facts upon which it is made and within two years after final judgment; and that a motion for a new trial based on any other grounds must be made within seven days after the verdict or finding of guilt or within such further time as the court may fix during the seven-day period. The jury returned verdicts of guilty against Jensen on October 19, 1977. It is clear that Jensen's motion for a new trial on the ground that the opening and closing arguments were not recorded was not timely made and, thus, denial of his motion for a new trial was proper.[4] *State v. Iverson,* 225 N.W.2d 48, 56 (N.D.1974).

 Even if Jensen had properly raised the issue in his applications for post-conviction relief, his allegation would be clearly insufficient to justify relief. Jensen has not suggested any error that may have occurred during the prosecution's opening or closing arguments. The sole error specified is the failure of the court reporter to record those arguments and he contends that this alleged error, in itself, entitles him to post-conviction relief.

Jensen relies upon numerous Federal cases to support his proposition that the failure of the court reporter to record the opening and closing arguments is error which entitles him to post-conviction relief. These cases are based upon the United States Supreme Court's decision in *Hardy v. United States,* 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964), which in turn is ground-

ed on the provisions of the Court Reporter Act, 28 U.S.C. § 753(b), rather than the Federal Constitution. Furthermore, these cases deal with direct appeals from convictions rather than post-conviction proceedings, and concern situations in which new counsel had been appointed on appeal who had not been present at the original trial and had no knowledge of the case prior to representing the defendant on appeal. This is not the situation before us.

The same counsel who represented Jensen in his second trial also represented him on direct appeal following that conviction. No mention was made at that time of any alleged errors which occurred during the course of opening or closing arguments, or of the court reporter's failure to record these arguments. In his post-conviction proceedings, Jensen alleges no specific incident which took place during the arguments which, if true, would constitute reversible error. Under these circumstances, the mere failure to record the opening and closing arguments in itself is not sufficient to afford Jensen post-conviction relief. *See Aeby v. United States,* 409 F.2d 1, 2 (5th Cir.1969); *United States v. Bebik,* 333 F.2d 736, 738 (4th Cir.1964); *Brown v. United States,* 314 F.2d 293, 295 (9th Cir.1963).

## VI

 Jensen argues that the trial court's application in his case of the dangerous special offender statute, § 12.1–32–09, N.D. C.C., is unconstitutional in that it violates the prohibition against *ex post facto* laws. *See* U.S. Const. art. 1, § 10; N.D. Const. art. I, § 18. In *State v. Pleason,* 56 N.D. 499, 218 N.W. 154, 155 (1928), our court, quoting from the United States Supreme Court's decision in *Calder v. Bull,* 1 U.S. (3 Dall. 386, 389) 269, 273, 1 L.Ed. 648, 650 (1798), defined an *ex post facto* law as:

"1. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal;

---

4. The district court did not deny Jensen's motion for a new trial on the ground that it was not timely. However, we have held in the past that a judgment will not be reversed merely because it rests upon inapplicable reasons.

*See, e.g., Bohn v. Bohn Implement Co.,* 325 N.W.2d 281, 283 (N.D.1982); *KFGO Radio, Inc. v. Rothe,* 298 N.W.2d 505, 509 (N.D.1980); *McGuire v. Warden of State Farm, Etc.,* 229 N.W.2d 211, 217 (N.D.1975).

and punishes such action. 2. Every law that aggravates a crime, or makes it greater than it was, when committed. 3. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4. Every law that alters the legal rules of evidence and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender."

The issue arises in the instant case because the offenses for which Jensen was convicted were committed on November 16, 1974, several months before the provisions of Title 12.1, N.D.C.C., became effective. *See* § 42, Ch. 116, 1973 S.L. Both of Jensen's trials took place after July 1, 1975, when the provisions of the new Criminal Code went into effect. The thrust of Jensen's argument is that the dangerous special offender statute is *ex post facto* as applied to him because the statute provides that if an offender is convicted of a class A felony, the court may impose a sentence "up to a maximum of life imprisonment", § 12.1–32–09(2)(a), N.D.C.C.; whereas, under the law in effect prior to July 1, 1975, the punishment for murder in the second degree was imprisonment for "not less than ten years nor more than thirty years", § 12–27–14, N.D.C.C. (repealed by § 41, Ch. 116, 1973 S.L.).

There are several problems with Jensen's argument. Initially, we note that the sentence Jensen ultimately received was no more onerous than what he could have received under prior law, and, thus, Jensen cannot claim that he has been harmed in any way by his being sentenced under the new Criminal Code. Furthermore, although § 12.1–01–01(2), N.D.C.C., states that the provisions of Title 12.1 do not apply to offenses committed prior to its effective date, § 12.1–01–01(3)(b), N.D.C.C., provides for the following exception:

"3. In cases pending on or after the effective date of this title, and involving offenses committed prior thereto: ·

. . . . .

"b. The court, with the consent of the defendant, may impose sentence under the provisions of this title which are applicable to the offense and the offender."

The record reflects that Jensen's counsel during the second trial specifically requested that Jensen be sentenced under the provisions of the new Criminal Code. Thus, because Jensen elected that he be sentenced under the new Criminal Code, we believe that he effectively waived his argument that the dangerous special offender statute as applied to him operated as an unconstitutional *ex post facto* law.

█ In any event, we do not believe that § 12.1–32–09, N.D.C.C., is unconstitutional as an *ex post facto* law. In *State v. Wells*, 265 N.W.2d 239, 244 (N.D.1978), *cert. denied*, 442 U.S. 932, 99 S.Ct. 2865, 61 L.Ed.2d 300 (1979), our court recognized that the dangerous special offender statute does not create a new crime. In *State v. Wells*, 276 N.W.2d 679, 689 (N.D.), *cert. denied*, 442 U.S. 932, 99 S.Ct. 2865, 61 L.Ed.2d 300 (1979), we further noted that the implementation and considerations of the dangerous special offender statute are analogous to a recidivist statute. The United States Supreme Court, in *Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948), determined that a recidivist statute there under consideration did not operate retroactively as an *ex post facto* law simply because one of the convictions giving rise to the defendant's status as an habitual offender took place before the effective date of the recidivist statute. We believe the Supreme Court's decision in *Gryger, supra,* is sufficiently analogous to be dispositive of Jensen's claim in the instant case. The Sixth Circuit Court of Appeals has likewise relied upon *Gryger* in rejecting a defendant's claim that 18 U.S.C. § 3575 [the Federal dangerous special offender statute "generally similar to our dangerous special offender statute", *Wells, supra* 265 N.W.2d at 244] is unconstitutional as an *ex post facto* law. *See United States v. Ilacqua,* 562 F.2d 399, 404 (6th Cir.1977), *cert. denied,* 435 U.S. 947, 98 S.Ct. 1532, 55 L.Ed.2d 545 (1978).

## VII

Jensen next argues that § 12.1–32–09, N.D.C.C., the dangerous special offender statute, violates the State Constitution because it is a "local" or "special" law enacted for the punishment of crimes. Article IV, Section 43, subsection 21, of the North Dakota Constitution provides:

"*Section 43.* The legislative assembly shall not pass local or special laws in any of [the] following enumerated cases, that is to say:

. . . . .

"21. For the punishment of crimes."

In *State v. First State Bank,* 52 N.D. 231, 202 N.W. 391, 399 (1924), our court stated that

"... a 'special law' is one which relates only to particular persons or things of a class, as distinguished from a 'general law,' which applies to all things or persons of a class ... and a 'local law' is one which applies to a specific locality or spot, as distinguished from a law which operates generally throughout the entire state...."

*See also State v. Lawler,* 53 N.D. 278, 205 N.W. 880, 883 (1925). Because the dangerous special offender statute applies uniformly to all persons convicted of crimes committed in North Dakota, rather than to one specific locality or to particular persons or things, it is clear that the statute does not constitute a "special" or "local" law in violation of the State Constitution.

## VIII

Jensen's next argument is basically that the presiding judge at the second trial should not have been made aware of the State's intention to use the dangerous special offender statute prior to the trial itself. The dangerous special offender provision, § 12.1–32–09(3), N.D.C.C. [amended in § 1, Ch. 128, 1977 S.L.], in effect from July 1, 1975, to July 1, 1977, provided in part as follows:

"3. ... In no case shall the fact that the prosecuting attorney is seeking sentencing of the defendant as a dangerous special offender be disclosed to the jury, or be disclosed, before any plea of guilty or verdict or finding of guilt, to the presiding judge without the consent of the parties."

At the time of the second trial, § 12.1–32–09(3), N.D.C.C., provided, and currently provides, in pertinent part, that:

"3. ... In no case shall the fact that the prosecuting attorney is seeking sentencing of the defendant as a dangerous special offender be disclosed to the jury."

During a pre-trial conference held before the commencement of the second trial, the State informed the presiding judge that it intended to rely upon the dangerous special offender statute in the event of a conviction. This information was provided to the trial court after defense counsel requested that Jensen be advised what the possible penalty would be if he were convicted.[5] Jensen argues that because the trial court was notified of the State's intention to rely upon the dangerous special offender statute, in violation of the law which was in effect from July 1, 1975,

---

5. The anomaly in § 12.1–32–09, N.D.C.C., as it existed prior to the 1977 amendment and which required that the trial judge not be informed of the State's intent to rely on the dangerous special offender statute, was pointed out by Justice Vogel in his dissenting opinion in *State v. Ternes,* 259 N.W.2d 296, 301 (N.D.1977), *cert. denied,* 435 U.S. 944, 98 S.Ct. 1524, 55 L.Ed.2d 540 (1978);

"... the inevitable consequence of this is that the trial judge tells the defendant one thing—that the maximum penalty for murder is 20 years' imprisonment—and the defendant's own attorney tells him something else—that the maximum penalty is life imprisonment. No matter how conscientiously the attorney attempts to explain this, a defendant is going to doubt that his attorney knows what he is talking about, or that the judge does. It is basic law that the defendant is entitled to know what conduct is proscribed by a criminal statute [*State v. Hanson,* 256 N.W.2d 364 (N.D.1977) ], and I believe he is also entitled to know what the maximum penalty is if he pleads guilty or is found guilty.

"He cannot know what the penalty is if he gets wildly variant information from his own attorney and from the judge."

through July 1, 1977, the portion of the sentence he received pursuant to the provisions of § 12.1–32–09, N.D.C.C., should be invalidated.[6] The district court in its order denying Jensen's applications for post-conviction relief and motion for a new trial, found that:

"... this is merely a procedural matter and no error resulted, nor were rights of the Defendant jeopardized. Therefore, the Court concludes that this allegation of error does not constitute a basis for relief."

We agree. Allowing the presiding judge to know that the dangerous special offender notice had been filed is a procedural matter which was controlled by the statute in effect at the time of the second trial, rather than the statute in effect at the time of the first trial. We further note that, in any event, the presiding judge at the second trial was also the presiding judge during the first trial and, therefore, knew that a dangerous special offender notice had been filed during the first trial. Thus, it is difficult to imagine how Jensen had been prejudiced by the State's informing the trial court prior to the commencement of the second trial that it intended to once again rely upon the provisions of § 12.1–32–09, N.D.C.C.

### IX

Jensen also contends that it was error for the trial court, following the second trial, to combine the dangerous special offender hearing and the sentencing hearing into one proceeding. Upon reviewing § 12.1–32–09, N.D.C.C., it is clear that the statute does not specifically require that two distinct and separate hearings be held. Furthermore, we see no valid reason for imposing such a requirement whenever the provisions of the dangerous special offender statute have been invoked.

---

6. In this regard, Jensen also argues that the presiding judge's knowledge prior to the commencement of the second trial that the State would rely upon the dangerous special offender statute rendered it an *ex post facto* law or a bill of attainder. For the reasons stated in *United States v. Ilacqua*, 562 F.2d 399, 404–405 (6th Cir.1977), *cert. denied*, 435 U.S. 947, 98 S.Ct.

### X

Jensen relies upon the United States Supreme Court's decisions in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), for the proposition that his Fifth Amendment privilege against self-incrimination was violated because Dr. Hubert Carbone, a psychiatrist, and Dr. Awad Ismir, a psychologist, were allowed to testify during the second trial concerning the examinations they conducted of him. Dr. Carbone and Dr. Ismir were called on behalf of the State in rebuttal to defense expert testimony on the issue of Jensen's asserted defense of insanity. *See* § 12.1–04–03, N.D.C.C. (since amended by § 1, Ch. 121, 1977 S.L.). Neither Jensen nor his trial counsel objected to the use of the testimony.

In *Estelle, supra,* the Supreme Court held that the State's introduction into evidence of a court-appointed psychiatrist's testimony to prove a capital defendant's future dangerousness, based on information obtained by the psychiatrist from his interrogation of a defendant in custody who had neither requested the examination nor introduced psychiatric evidence on that issue, without a prior warning to the defendant that he has the right to remain silent and that any statement he made could be used against him at a sentencing proceeding, violated the rule adopted in *Miranda, supra.* The *Estelle* case is distinguishable from the instant case. Jensen raised the defense of insanity by introducing his own psychiatric evidence on that issue, and, therefore, waived any Fifth Amendment privilege he may have had with respect to the insanity question.[7] *See, e.g., United States v. Whitlock,* 663 F.2d 1094, 1107 (D.C.Cir.1980);

---

1532, 55 L.Ed.2d 545 (1978), we likewise reject this contention.

7. We note that this proposition comports with our decision in *State ex rel. Jorgenson v. Dist. Court, Etc.,* 289 N.W.2d 211, 215 (N.D.1980) [which involved the interpretation of Rule 12.2,

United States v. Cohen, 530 F.2d 43, 47–48 (5th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 149, 50 L.Ed.2d 130 (1976); Karstetter v. Cardwell, 526 F.2d 1144, 1145 (9th Cir.1975); Pope v. United States, 372 F.2d 710, 720–721 (8th Cir.1967), vacated and remanded on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968); United States v. Hinckley, 525 F.Supp. 1342, 1348–1350 (D.D. C.1981), aff'd, 672 F.2d 115 (D.C.Cir.1982).

### XI

 Jensen also claims that he was denied his Sixth Amendment right to effective assistance of counsel. In State v. Kroeplin, 266 N.W.2d 537, 542 (N.D.1978), we stated that the standard of effective counsel is "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance" [quoting from West v. State of Louisiana, 478 F.2d 1026, 1033 (5th Cir.1973)]. Furthermore, defense counsel in a criminal case is presumed to be competent and adequate in the absence of evidence overcoming the presumption, and the party alleging inadequacy of defense counsel has the burden of proving this fact. State v. Mehralian, 301 N.W.2d 409, 415 (N.D.1981).

With the above-stated rules in mind, we have reviewed the record of Jensen's second trial and conclude that there is absolutely no showing whatsoever that Jensen's defense counsel were inadequate.

Jensen raises 44 additional unsupported and conclusory allegations of error in his brief.[8] The district court found all of the allegations to be "inconsequential" and declined to comment further on them. Upon examining Jensen's additional allegations, we believe that they are totally without merit and provide no bases for post-conviction relief.

N.D.R.Crim.P.], and with Rule 503(d)(3) of the North Dakota Rules of Evidence.

**8.** It is evident that Jensen has used the proverbial "shotgun" approach in his applications for post-conviction relief and motion for a new trial. We reiterate our view in State v. Skjons-

For the reasons stated in this opinion, we dismiss the appeal as to the trial court's denial of Jensen's applications for post-conviction relief and affirm the trial court's denial of his motion for a new trial.

ERICKSTAD, C.J., and PEDERSON, SAND and NEUMANN, District Judge, concur.

NEUMANN, D.J., sitting in place of VANDE WALLE, J., disqualified.

by, 319 N.W.2d 764, 772 (N.D.1982), that the quality and the reasons in support of an alleged error, rather than the mere quantity of alleged errors, control in determining whether or not a party should be afforded relief.