STATE of North Dakota, Plaintiff
and Appellee,

v.

Robert Dale HOFFARTH, Defendant
and Appellant.

Cr. No. 890227.

Supreme Court of North Dakota.

May 14, 1990.

Tom P. Slorby (argued), State's Atty., Minot, for plaintiff and appellee.

Benjamin C. Pulkrabek (argued), Mandan, for defendant and appellant.

MESCHKE, Justice.

Robert Dale Hoffarth appealed from judgments of conviction, following his

guilty pleas, for manslaughter and reckless endangerment. We affirm.

On the evening of September 19, 1988 Hoffarth became engaged in an argument with Elaine Olson and Mark Gaarder in the parking lot of a Minot bar. During the argument Hoffarth drew a revolver. In an ensuing struggle between Olson and Hoffarth the revolver was fired, wounding Olson and killing Hoffarth's companion, Robert Franstvog, Jr.

Hoffarth was charged with murder and criminal attempt. He pled not guilty. Later, he pled guilty to amended charges of manslaughter and reckless endangerment. Hoffarth was sentenced as a dangerous special offender to twenty years in prison on the manslaughter conviction and to five years, concurrently, on the reckless endangerment conviction.

On appeal, Hoffarth contended that the trial court did not follow the procedures required by NDCC 12.1–32–09 in sentencing him as a dangerous special offender. Specifically, Hoffarth asserted that he did not receive a five-day notice of the dangerous special offender hearing and that the State did not present timely evidence to prove that Hoffarth was a dangerous special offender.

The prosecution filed a notification that Hoffarth would be treated as a dangerous special offender under NDCC 12.1–32–09(1)(e) because he used a dangerous weapon in committing the offense. As this court ruled in *State v. Wells*, 265 N.W.2d 239 (N.D.1978), the dangerous special offender statute creates no new crime, but rather increases the penalty for conviction of an offense.

■ At the change-of-plea hearing on May 23, 1989, the trial court scheduled the sentencing and advised Hoffarth:

I will set 1:30 p.m., July 7, as the sentencing date. And in the meantime I will order a presentence investigation.

Mr. Hoffarth, would you please stand.

\*     \*     \*     \*     \*     \*

There are some things that I want to explain to you for the record. I have just indicated that I would order a pre-sentence investigation. That investigation will be submitted in the form of a report and you and your attorney and the State's Attorney would have access to that prior to the time of sentencing. The State is seeking to invoke the special dangerous offender statute and it is my interpretation of the law that when this takes place the Court is required to order a presentence investigation, and also to set a sentencing date at which time the sentencing hearing will be conducted to consider all the matters relevant to sentencing including the issue of special dangerous offender status.

Now, Mr. Hoffarth, at the sentencing you will be able to cross-examine any witnesses that the State might choose to present on the issue of disposition. You will also be entitled to present any witnesses that you might want to present bearing on disposition and you are also entitled to the process of the Court to compel the attendance of those witnesses.

Matters contained in the presentence report will be considered by the Court in imposing sentence and in considering the issue of the special dangerous offender status. You will be provided as I have indicated earlier with a copy of that report in a reasonable time in advance of the sentencing hearing. And you will be given an opportunity to present evidence should you disagree with any part of that report.

It was permissible for the trial court to combine the dangerous special offender hearing and the sentencing hearing into one proceeding. *State v. Jensen*, 333 N.W.2d 686 (N.D.1983). We conclude that at the May 23, 1989 hearing Hoffarth received adequate and timely notice of the later dangerous special offender hearing.

■ Under NDCC 12.1–32–09(4), the trial court can sentence a defendant as a dangerous special offender "[i]f it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is

a dangerous special offender...." The trial court was informed by the presentence report and by testimony given at the change-of-plea hearing on May 23, 1989, that Hoffarth used a firearm in committing the crimes. It was unnecessary for the trial court to require the prosecution to repeat that evidence at the dangerous special offender hearing. We conclude that the trial court followed the statutory procedure in sentencing Hoffarth as a dangerous special offender.

◼ Hoffarth contended that the trial court did not follow the procedures required under NDRCrimP 11(c) before accepting Hoffarth's guilty pleas. NDRCrimP 11(c) provides:

*Insuring that the plea is voluntary.* The court shall not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c)] in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty results from previous discussion between the prosecuting attorney and the defendant or the defendant's attorney.

Hoffarth asserted, specifically, that the trial court did not inquire as to whether Hoffarth's willingness to plead guilty resulted from prior discussions between the prosecuting attorney and Hoffarth or Hoffarth's attorney.

At the May 23, 1989 hearing the prosecutor told the court that he was amending the charges to manslaughter and reckless endangerment and that it was his understanding that Hoffarth would be pleading guilty to those charges. Later in the hearing, the prosecutor told the court:

Your Honor, no agreement has been reached between the State and the defense as to sentencing. I have advised the defense as to what the recommendation of the State would be and that would be a sentence of 20 years on the Manslaughter and 5 years on the Reckless Endangerment to be served consecutive-

ly, which is the maximum penalty available.

From these statements the court knew that discussions had occurred between the prosecution and the defense but that Hoffarth's willingness to plead guilty was not induced by an agreement for a reduced sentence recommendation by the State.

To make certain that Hoffarth's plea was voluntary the trial court questioned him:

THE COURT: Mr. Hoffarth, in your decision to enter a plea of guilty to these charges did anyone threaten you to get you to plead guilty?

MR. HOFFARTH: No, Your Honor.

\*    \*    \*    \*    \*    \*

THE COURT: Has anyone made any promises to you to get you to plead guilty to these charges?

MR. HOFFARTH: No.

THE COURT: Has anyone promised that you would receive a certain sentence in exchange for your plea of guilty to either charge?

MR. HOFFARTH: No.

THE COURT: Have you decided to plead guilty after considering all of the alternatives, including the probability of the outcome should you stand trial on the original charge? In other words what I am getting at, have you considered the alternatives and have you come to this decision of your own free will after considering these alternatives?

MR. HOFFARTH: Yes.

Thus, the trial court ascertained by direct inquiry that Hoffarth pled guilty voluntarily and without undue compulsion.

Rule 11(d) of the Federal Rules of Criminal Procedure is substantively identical to our Rule 11(c), NDRCrimP. The United States Court of Appeals for the Eighth Circuit, in construing the federal rule, has stated that although ritualistic compliance with the rule is not required the trial court must use procedures sufficient to determine that the plea is voluntary and not the product of force, threats, or promises apart from a plea agreement. *United States v. Riegelsperger,* 646 F.2d 1235 (8th Cir.1981). In construing NDRCrimP 11, we too have

concluded that ritualistic compliance is not required, but that the trial court must substantially comply with the procedural requirements of the rule to ensure that a defendant is entering a voluntary plea of guilty. *State v. Storbakken,* 246 N.W.2d 78 (N.D.1976). *Storbakken* ruled that the scope of the trial court's inquiry under NDRCrimP 11 need not conform to any predetermined, ritualistic form but rather can be adjusted to the complexity of the charge as well as the surrounding circumstances in each case.

We conclude that under the circumstances of this case the procedure used by the trial court was sufficient for the court to determine that Hoffarth's plea was voluntary and not the product of force, threats, or promises. The purpose of the inquiry required by the second sentence of NDRCrimP 11(c) is for the trial court to ascertain whether the guilty plea is the result of plea negotiations. Although the trial court did not explicitly ask Hoffarth whether his willingness to plead guilty resulted from previous discussions with the prosecuting attorney, the court was apprised during the proceeding of the very information that question was intended to elicit. The court understood why the State had filed an amended information with reduced charges. The court was expressly told by the prosecutor that no agreement had been made on sentencing and that Hoffarth had been informed that the prosecution was going to recommend the maximum penalty. Answering the court's questions to him, Hoffarth acknowledged that his guilty plea was not the product of force, threats, or promises but was voluntarily made after Hoffarth's consideration of the alternatives and the probable outcome of a trial.

We hold that the procedure followed by the trial court substantially complied with NDRCrimP 11(c) and adequately determined that Hoffarth voluntarily pled guilty.

■ Hoffarth contended that the trial court did not advise him at the change-of-plea hearing or at the sentencing hearing about his rights as required under NDRCrimP 11(b)(3) and (4):

*(b) Advice to defendant.* The court may not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c)] in open court, informing the defendant of and determining that the defendant understands the following:

\*     \*     \*     \*     \*     \*

(3) That the defendant has the right to plead not guilty, or to persist in that plea if it has already been made, or to plead guilty;

(4) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial by jury or otherwise and the right to be confronted with adverse witnesses....

The prosecution conceded that Hoffarth was not so advised at either the change-of-plea hearing or the sentencing hearing but asserted that Hoffarth was not prejudiced because he was advised of these matters at the arraignment hearing on November 1, 1988:

[THE COURT] You have the right to plead not guilty. You also have the right to plead guilty. However, if you plead guilty there will not be a further trial of any kind and if you plead guilty you will waive the right to be confronted with the witnesses against you.

If you enter a plea of not guilty then you are entitled to and you would have a trial by a jury at a relatively early date.

You are entitled to meet the witnesses against you face to face. That is, to have those persons brought into court, placed under oath, and to testify, and you through the assistance of your attorney would have the right to cross examine those persons.

You also have the right to use the process of the Court to compel the attendance of any witnesses whom you might wish to have testify on your behalf.

You cannot be compelled to be a witness against yourself. For example, you can't be forced to take the witness stand

and to testify and the fact that you do not do so will not be held against you in any manner whatsoever.

Finally, every person is presumed to be innocent and the State must prove that you are guilty of each of these charges beyond a reasonable doubt.

Do you have any questions about any of your basic rights that I have just explained?

THE DEFENDANT: No, Your Honor.

In *State v. Schumacher,* 452 N.W.2d 345 (N.D.1990), the defendant was allowed to withdraw his guilty plea because the trial court failed to personally advise him at either the arraignment or the plea hearing of the mandatory minimum sentence for the offense charged. We concluded in *Schumacher* that the NDRCrimP 11(b)(2) requirement that the court inform the defendant of the mandatory minimum punishment could not be met by the defendant receiving that knowledge from other sources. In this case, the trial court personally advised Hoffarth in open court as required under Rule 11.

The trial court informed Hoffarth at the arraignment that he had a right to plead guilty or to plead not guilty and that, if he chose to plead guilty, there would be no further trial of any kind and he would be waiving his right to confront adverse witnesses. Hoffarth's response that he had no questions indicated that he understood what the court had advised him. There is substantial compliance with NDRCrimP 11 if the record of the arraignment, in conjunction with the record of the change-of-plea hearing, clearly reveals that the defendant had knowledge of the rights he was waiving by pleading guilty. *State v. Hagemann,* 326 N.W.2d 861 (N.D.1982). *See also State v. Falos,* 431 N.W.2d 154 (N.D. 1988). We conclude that the trial court substantially complied with NDRCrimP 11(b).

Hoffarth claimed that he was denied effective assistance of counsel because his attorney did not fully protect his rights under NDCC 12.1–32–09 and NDRCrimP 11. We have held that Hoffarth was not denied his rights under NDCC 12.1–32–09

or under NDRCrimP 11. We conclude, therefore, that his claim of ineffective assistance of counsel, which was based upon a denial of those rights, was without merit.

The judgments of conviction are affirmed.

ERICKSTAD, C.J., and LEVINE, GIERKE and VANDE WALLE, JJ., concur.