Robert **HOFFARTH**, Petitioner and Appellant,

v.

**STATE** of North Dakota, Respondent and Appellee.

Civ. No. 930307.

Supreme Court of North Dakota.

April 20, 1994.

Benjamin C. Pulkrabek, Mandan, for petitioner and appellant.

Douglas L. Mattson, State's Atty., Minot, for respondent and appellee.

SANDSTROM, Justice.

Robert Hoffarth appeals from a district court summary judgment denying his application for post-conviction relief. Hoffarth claims he should be allowed to withdraw his plea of guilty to manslaughter and reckless endangerment because: (1) at his arraignment, the district court incorrectly informed him of the possible mandatory sentence, in violation of Rule 11(b), N.D.R.Crim.P.; (2) his trial counsel failed to properly inform him of the possible sentence; and, (3) the length of his sentence was the result of gender bias.

We affirm, holding (1) because the issue of compliance with Rule 11(b) was raised by Hoffarth in his direct appeal, he is barred from raising it again in this post-conviction proceeding, (2) because Hoffarth was correctly informed by the court of possible maximum and mandatory sentences, his claim of ineffective assistance of counsel is meritless; and, (3) Hoffarth failed to present credible evidence establishing a prima facie claim of gender bias.

I

The facts underlying Hoffarth's conviction were summarized by this Court in Hoffarth's direct appeal. On September 13, 1988, in a Minot bar's parking lot, Hoffarth argued with Elaine Olson and Mark Gaarder. Hoffarth drew a revolver. During the struggle between Olson and Hoffarth that followed, the revolver was fired, wounding Olson and killing Hoffarth's companion, Robert Franstvog, Jr. State v. Hoffarth, 456 N.W.2d 111, 112 (N.D.1990).

Hoffarth was originally charged with murder, a class AA felony, and criminal attempt (to commit murder) a class A felony. On May 23, 1989, as part of a plea agreement, Hoffarth pled guilty to reduced charges of manslaughter and reckless endangerment. Hoffarth was sentenced to twenty years for manslaughter and five years for reckless en-

dangerment, to be served concurrently in the North Dakota State Penitentiary.

Hoffarth appealed his conviction claiming the district court did not follow the procedures required by the dangerous special offender statute; the district court did not advise him of his rights as required by Rule 11(b), N.D.R.Crim.P.; and, he was denied effective assistance of counsel because his attorney did not fully protect his rights under the dangerous special offender statute and Rule 11(b). Hoffarth at 112–15. This Court rejected Hoffarth's claims, concluding Hoffarth had received adequate and timely notice of the dangerous special offender hearing; the district court had substantially complied with Rule 11, N.D.R.Crim.P.; and, Hoffarth had not been denied effective assistance of counsel because his rights under the dangerous special offender statute and Rule 11 were not violated. Hoffarth.

In April 1993, Hoffarth began this post-conviction relief proceeding. Hoffarth claims he should be allowed to withdraw his guilty plea because: (1) the district court violated Rule 11(b)(2), N.D.R.Crim.P., by informing him improperly of the possible mandatory sentence on the criminal attempt charge; (2) he was denied effective assistance of counsel because his attorney did not properly inform him of the correct sentence; and, (3) the length of his sentence was the result of gender bias.

The district court summarily dismissed Hoffarth's application for post-conviction relief, concluding Hoffarth's first two claims had been finally adjudicated in Hoffarth's direct appeal. The district court concluded Hoffarth had not raised a prima facie case of gender bias.

II

The standard of review for a summary denial of post-conviction relief is like the review of an appeal from a summary judgment. DeCoteau v. State, 504 N.W.2d 552, 556 (N.D.1993); State v. Wilson, 466 N.W.2d 101, 103 (N.D.1991). Summary disposition is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." N.D.C.C. § 29–32.1–09(1).

All reasonable inferences favor the defendant at all preliminary stages of a post-conviction proceeding. *Wilson* at 105. If a reasonable inference raises a genuine issue of material fact, the defendant is entitled to an evidentiary hearing. N.D.C.C. § 29–32.1–09(2); *State v. Skjonsby*, 338 N.W.2d 628 (N.D.1983).

The question here is whether the State was entitled to judgment denying Hoffarth's application for post-conviction relief as a matter of law.

### III

Hoffarth's first two claims are based on an apparent misstatement by the district court during Hoffarth's arraignment. While explaining the criminal attempt charge, the court mistakenly confused the word "mandatory" for the word "maximum."

"THE COURT: You have heard the reading of the Information setting forth the charges. There are two charges. Count 1 charges you with the crime of Murder. That's an AA felony. The maximum penalty for Murder is life imprisonment. It carries a mandatory parole component of 30 years. And Count 2 charges you with Criminal Attempt. That's a class A felony. *Mandatory* penalty for a class A felony is 20 years incarceration or a fine of $10,000 or both. There is also a mandatory minimum that applies to these offenses of four years incarceration. Do you understand that?

"THE DEFENDANT: Not exactly. I know it's not a minor charge.

"THE COURT: *Because of the allegation of the use of the firearm it's a mandatory minimum sentence of four years.* Now with that explanation I am going to proceed to inform you of your other basic constitutional rights." (Emphasis added.)

Hoffarth claims he pled guilty to the reduced charges because he believed, based on the judge's misstatement at the arraignment, he was facing a twenty-year mandatory minimum sentence for the attempt charge.

Hoffarth contends the misstatement violated his rights under Rule 11(b)(2), N.D.R.Crim.P., which provides, in part:

"*Advice to defendant.* The court may not accept a plea of guilty without first, by addressing the defendant personally [except as provided in Rule 43(c)] in open court, informing the defendant of and determining that the defendant understands the following:

\*    \*    \*    \*    \*    \*

2. The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered;"

Hoffarth also claims he was denied his right to counsel because his court-appointed attorney informed him after the arraignment that he was facing two life sentences. Hoffarth argues, he would not have entered into the plea bargain if the district court had correctly stated the possible sentence, and if his trial counsel had properly informed him of the possible sentence.

N.D.C.C. § 29–32.1–12, provides:

"*Affirmative defenses—Res judicata— Misuse of process.*

1. An application for postconviction relief may be denied on the ground that the same claim or claims were fully and finally determined in a previous proceeding.

2. A court may deny relief on the ground of misuse of process. Process is misused when the applicant:

a. Presents a claim for relief which the applicant inexcusably failed to raise either in a proceeding leading to judgment of conviction and sentence or in a previous postconviction proceeding; or

b. Files multiple applications containing a claim so lacking in factual support or legal basis as to be frivolous.

3. Res judicata and misuse of process are affirmative defenses to be pleaded by the state. The burden of proof is also upon the state, but, as to any ground for relief which, by statute or rule of court, must be presented as a defense or objection at a specified stage of a criminal prosecution, the application shall show good cause for noncompliance with the statute or rule."

In his direct appeal, Hoffarth challenged his conviction claiming Rule 11, N.D.R.Crim.P., had not been followed. This Court rejected his argument. *Hoffarth* at 115. Because Hoffarth already raised the issue of Rule 11 compliance in his direct appeal, he is barred under N.D.C.C. § 29–32.1–12 from raising the issue again. *See State v. Manke,* 361 N.W.2d 247, 248 (N.D. 1985).

Hoffarth contends, under the procedure first outlined by this Court in *State v. Ricehill,* 415 N.W.2d 481 (N.D.1987), he is entitled to a hearing on his claim of ineffective assistance of counsel. Because of its factual nature, a claim of ineffective assistance of counsel is most effectively presented in a post-conviction relief proceeding. *Ricehill* at 484–85; *State v. Sayler,* 443 N.W.2d 915, 917–18 (N.D.1989). When a claim for ineffective assistance of counsel is argued on direct appeal, we will review the entire record. "If we cannot readily determine that assistance of counsel was plainly defective and there exist no other grounds for reversal, then the defendant can later pursue his claim at a post-conviction proceeding where an adequate record can be developed." *Sayler* at 918.

To prevail on his claim of ineffective assistance of counsel, Hoffarth must show his trial attorney's representation fell below an objective standard of reasonableness and this defective conduct prejudiced him. *State v. Wilson,* 466 N.W.2d 101, 105 (N.D.1991). In this case, Hoffarth's unsupported allegation that his trial counsel informed him he faced "two life sentences" does not raise an issue of material fact.[1]

The district court correctly informed Hoffarth of the possible maximum and mandatory sentences. At his initial appearance on September 14, 1988, Hoffarth was informed by the court of the maximum sentences for both charges:

"THE COURT:

\* \* \* \* \* \*

I have received today, and signed the complaint which charges you with two counts, two criminal charges. Count # 1 is murder, it is classified as a AA Felony. Count # 2 is entitled criminal attempt, and that is classified as a Class A Felony. Now let me tell you alittle [sic] bit about what that means.

"In North Dakota offenses are divided into seven classes, and they are dominated and subject to maximum penalties as follows: You are charged with murder, a AA Felony, and it reads: Class AA Felony, for which a maximum penalty of life imprisonment may be imposed. Notwithstanding the provisions of Section 12–59–05, a person found guilty of a Class AA Felony shall not be eligible to have his sentence considered by the parole board for thirty years, less sentence reduction earned for good conduct after his admission to the penalty. So that's the maximum penalty for Count # 1.

"Count # 2 is a Class AA [sic] Felony, criminal attempt, and the maximum is as follows: Class A Felony, for which a maximum penalty of twenty years imprisonment, a fine of $10,000.00 or both may be imposed. Now, those are the maximum sentences and it does not necessarily mean that that sentence would be imposed, it just means that nothing more than that could be."

The possible penalties were again explained to Hoffarth at his arraignment on November 1, 1988. Although originally misstating the mandatory sentence on the attempt charge, the court corrected itself and explained that on the attempt charge Hoffarth was facing a mandatory minimum sentence of four years.

Most importantly, prior to accepting Hoffarth's plea, the court explained the penalties for manslaughter and reckless endangerment. Hoffarth was informed the State had filed a special dangerous offender notice against him to enhance the maximum penalty

---

1. Hoffarth's brief on appeal includes an affidavit where Hoffarth claims "his attorney ... told him he was facing two life sentences." Hoffarth's affidavit was not presented to the district court. The affidavit is not part of the record on appeal, and therefore, will not be considered by this Court.

of the manslaughter charge to twenty years, instead of ten years for a class B felony.

"THE COURT: Mr. Hoffarth, the State has filed an Amended Information charging you with the crimes of Manslaughter under Count 1 and Reckless Endangerment under Count 2. And the State has also filed a Notification of Dangerous Special Offender pursuant to 12.1–32–09 of the North Dakota Century Code.

"I understand, Mr. Hoffarth, that you intend to enter a plea of guilty to these two charges. But there are a couple of things I would like to explain to you before taking your plea. The charge of Manslaughter under Count 1 is a class B felony for which the penalty is ten years incarceration or a $10,000 fine or both. Under Count 2 the charge of Reckless Endangerment, a class C felony, which carries a maximum of $5,000 or five years of incarceration.

"However, because the State has filed notice that they intend to have you declared a special dangerous offender that doubles the applicable penalty of the Manslaughter charge to the maximum of 20 years instead of the normal 10 years that would usually apply for a class B felony. Do you understand what I am talking about?

"MR. HOFFARTH: Yes, I do, Your Honor.

"THE COURT: And, Mr. Hoffarth, I want you to also understand that if you are convicted or plead guilty to Count 1 because of the allegations of dangerous weapon it carries a mandatory minimum imprisonment of four years, do you understand that?

"MR. HOFFARTH: Yes."

■ Because the court informed Hoffarth of the possible sentences before it accepted his plea, Hoffarth's claim of ineffective assistance of counsel is meritless.

## IV

Hoffarth claims his prison sentence was the result of gender bias in violation of his right to equal protection. In support of his claim, Hoffarth relies on "sentencing statistics" which purport to show a pattern of gender bias in sentences in Ward County. The "sentencing statistics" compare the sentences of men and women in Ward County District Court from March 1988 through January 1990. Based on the statistics, Hoffarth contends:

"The figures contained in the Sentencing Statistics shows [sic] more than a marginal disparity. In the Sentencing Statistics three men have been sentenced for murder in Ward County District Court:

1. *Richard McNair* who received a life sentence.

2. *Michael Farmer* who received a 20 year sentence.

3. *Robert Hoffarth* who received a 20 year sentence.

"One woman has been sentenced during this same period, Kathleen Vogel, and she received 10 year deferred unsupervised probation and no time in jail. So, the shortest sentence a male received in Ward County District Court for murder was 20 years while a female convicted of murder only received a 10 year deferred *without* supervision and no jail time. This vast variance in gender sentencing is more than a marginal disparity."

■ We review alleged gender discrimination under an intermediate standard of scrutiny. *City of Mandan v. Fern*, 501 N.W.2d 739, 744 (N.D.1993). Under the intermediate standard, gender discrimination is unconstitutional unless "it is substantially related to the achievement of important governmental objectives." *Fern.* The initial burden is on the defendant to establish a prima facie case of purposeful gender discrimination. *Fern* at 748. In determining whether a prima facie case of gender discrimination has been made, a trial court is to examine all of the specific circumstances as well as any statistical evidence. *Fern* at 749.

Hoffarth has presented no valid evidence that his sentence was the result of gender bias. Hoffarth's "sentencing statistics" fail to take into account legitimate factors affecting the length of sentences. Section 12.1–32–04, N.D.C.C., lists factors that legitimately account for differences in sentences:

*"Factors to be considered in sentencing decision.* The following factors, or the converse thereof where appropriate, while not controlling the discretion of the court, shall be accorded weight in making determinations regarding the desirability of sentencing an offender to imprisonment:

"1. The defendant's criminal conduct neither caused nor threatened serious harm to another person or his property.

"2. The defendant did not plan or expect that his criminal conduct would cause or threaten serious harm to another person or his property.

"3. The defendant acted under strong provocation.

"4. There were substantial grounds which, though insufficient to establish a legal defense, tend to excuse or justify the defendant's conduct.

"5. The victim of the defendant's conduct induced or facilitated its commission.

"6. The defendant has made or will make restitution or reparation to the victim of his conduct for the damage or injury which was sustained.

"7. The defendant has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial period of time before the commission of the present offense.

"8. The defendant's conduct was the result of circumstances unlikely to recur.

"9. The character, history, and attitudes of the defendant indicate that he is unlikely to commit another crime.

"10. The defendant is particularly likely to respond affirmatively to probationary treatment.

"11. The imprisonment of the defendant would entail undue hardship to himself or his dependents.

"12. The defendant is elderly or in poor health.

"13. The defendant did not abuse a public position of responsibility or trust.

"14. The defendant cooperated with law enforcement authorities by bringing other offenders to justice, or otherwise cooperated.

"Nothing herein shall be deemed to require explicit reference to these factors in a presentence report or by the court at sentencing."

 Because Hoffarth's "sentencing statistics" do not consider the legitimate factors affecting the length of sentences, they are invalid.

The judgment of the district court denying Hoffarth's application for post-conviction relief is affirmed.

VANDE WALLE, C.J., and MESCHKE, LEVINE and NEUMANN, JJ., concur.